## Martin Geiger et al. v. Albert M. Harris.

*Contract for Services: Duties of Employees.* One employed by the year, on a salary, is bound to devote his time diligently and faithfully to the business interests of his employers, and to do nothing which will hinder or compete with those interests; but this will not prevent his rendering civilities and services for others which do not conflict with his duties to his employers. And in seasons of leisure, or when their work cannot be done, he is his own master.

A traveling commercial agent commits no violation of duty by taking, gratuitously, orders for goods upon a house in whose service he has formerly been engaged; he not having solicited them, and it not appearing that such orders were in any way prejudicial to the interests of his employers.

*Heard October 9.   Decided October 12.*

Error to Wayne Circuit.

Harris brought an action of assumpsit, against Geiger & Hoyt, in the Wayne Circuit Court for a balance due to him

under a special contract to serve them as their clerk or agent for one year, at the rate of $1,000 per annum. He commenced services under this contract on the 12th day of September, 1867, and on the 20th of March, following was discharged, as he alleges, without fault on his part. The defendants below pleaded the general issue; and on the trial gave evidence to show that the contract for hiring plaintiff was for an indefinite time at the rate of $1,000 per annum; that one Bentley occupied a portion of their store as a wholesale dealer in oil, and that about the time plaintiff commenced traveling for them they made an arrangement with Bentley whereby they were to receive a commission on all orders for oil that they should furnish him, and that they directed plaintiff to procure such orders; that plaintiff did, to some extent, procure such orders, and that on the first order thus procured he claimed the commission, but that the defendants claimed that it belonged to the firm, and that the plaintiff yielded, and it was paid to them; that a short time prior to plantiff's discharge defendants were informed and believed that plaintiff had been selling oil on commission for A. B. Hinman & Co., of Detroit, while in defendants' employ, without their knowledge, and that for this, and other reasons, they discharged him; but that they never stated to plaintiff that they had been so informed, nor did they allege that, as a reason for discharging him, and that they paid him in full to the time of his discharge; that prior to his engagement by defendants, plaintiff had been engaged for a considerable time selling oil for A. B. Hinman & Co., at a commission of fifty cents per barrel, which was the regular commission that said firm paid to all who sent them orders; that, subsequently, while plaintiff was in defendants' employ, between November 15, and February 28, A. B. Hinman & Co. had received 15 orders for oil, amounting to 24 barrels in all, which were entered upon their books as having been sent them by

plaintiff; that all these orders were from dealers in the interior of the State—old customers of A. B. Hinman & Co., —to whom plaintiff had sold for them before he was employed by defendants; that if plaintiff had set himself about selling oil for said firm, he ought to have sold a great deal more than 20 barrels in that length of time; that plaintiff has never been paid or claimed any pay for any of these orders, so taken while in defendants' employ; that, after his discharge by defendants, plaintiff again sold oil on commission for them, and that he had presented his bill for all his commissions on oil sold for them both before and after he was in defendants' employ, and had been paid in full therefor, but had never said anything to Mr. Hinman about that sold while in defendants' employ, and that said firm expected to pay commissions on said orders and were ready and willing to do so.

On the part of the plaintiff rebutting evidence was given to show that defendants never instructed him to sell oil for said Bentley; that the orders for oil taken by him for Hinman & Co. came from old customers of Hinman & Co., to whom plaintiff had before sold oil for them; that he did not solicit any orders, but these customers came to him knowing that he had before sold oil for said firm, and asked him to take the orders for them, as he was coming in, or to send them in by mail; that he told these persons he was not selling for Hinman & Co., but that he could take their orders as an accommodation to them; that some of said orders came from persons to whom he sold lamps and glass goods for defendants, and others were given to him by persons as they stood by while he was exhibiting or selling goods for defendants, or came to him voluntarily; that he took no time that belonged to defendants, in taking or sending these orders, and that the taking of them did not in any way interfere with the discharge of his duties to the defendants; that he took said orders out of courtesy to Mr.

Hinman, and that he did it without any expectation of receiving any commission or pay for it, and he never had received or asked for any; that he had an understanding with Mr. Hinman from the first that he was not to receive any commission or pay from Hinman & Co., while in defendants' employ, and, for that reason, Mr. Hinman had furnished him with a few stamped envelopes to send such orders as came to him for oil, without expense to him.

The jury found a verdict for the plaintiff of $550; and the judgment entered thereon, the defendants below bring into this Court by writ of error.

*Walker & Kent*, for plaintiffs in error.

*Wilkinson & Post*, for defendant in error.

CAMPBELL J.

Harris sued Geiger & Hoyt for his salary for a year, having been employed by them as a traveling agent and they having discharged him without a cause.

The defense set up was that Harris had taken orders during the period of his agency, for Hinman & Co., who were oil merchants. Geiger & Hoyt were in the glass and lamp business, and there was conflicting testimony as to their having agreed to get orders for another oil house for which they were to receive commissions.

The orders which Harris sent or brought in to Hinman were all,—as appeared by the only testimony in the cause, —given to Harris, without his solicitation or procurement, and were transmitted by him gratuitously; while before and after his connection with Geiger & Hoyt, he had obtained such orders from Hinman upon commission.

Plaintiffs in error requested the Court to charge "That if the jury find from the evidence that plaintiff (Harris) was in the habit of procuring orders for oil for Hinman &

Co., while in the employ of defendants, and without their knowledge, and that Hinman & Co., were accustomed to pay a commission for·such orders, and that plaintiff knew of such custom, that the obtaining of such orders, was a breach of plaintiff's duty to defendants, and that this breach of duty was a sufficient justification· for the discharge of plaintiff, even though the original contract was for one year." This the Court refused, but did charge as follows: "I cannot charge you in the language requested. If you shall find that the plaintiff was in the habit of procuring orders during the time that the defendants were entitled to his services under the contract, then you would have a right to consider that. That would be a breach of the contract,—to be engaged in other business during the time that they were entitled to his services. But you will make the distinction. If you find, as testified to by plaintiff, that he did not seek any orders, that he did not take any time from the defendants, that these were mere requests to him to hand in orders, and, as he testified, and as Hinman testified, they were all Hinman's old customers, he had no control over them; if you find he merely did that, so as not to interfere with his duties to the defendants, that would not be a breach of his contract. In other words, if he fulfilled his duty to the defendants, as he was bound to do under the hiring, the contract would not have been broken upon his part in that regard; but if you shall find, as I said, that he took the time that belonged to the defendants, and engaged in a business contrary to the hiring, then that would be such a violation of the contract as would prevent his recovery."

The claim of the plaintiffs in error is placed upon the assumption that an agent employed as Harris was, is during the agency so bound to his employers, that all of his time belonged to them, and all of the profits and' fruits of his labors or occupations, of whatever kind belonged to

them and not to him, so that any use of his time for any but them is a violation of duty.

This is a doctrine that cannot be admitted in regard to free persons. The charge of the Court below was correct, and the rule laid down is sensible and fair. An agent violates his duty if he neglects to use all reasonable and thorough diligence to further the interests of his employers. He also violates it still more plainly by doing or furthering any business which can in any way hinder or compete with theirs. But there must be seasons of leisure, and there may be circumstances under which their work cannot be done. And in doing their work, he may find it profitable for them to secure bargains or advantages by civilities and services which can in no way prejudice them. They have no claim against him except for faithful service. In every thing else, subject to this, he his own master, and may do what he pleases, so long as they are not prejudiced.

In the present case there was nothing tending to show that Harris had done any more than extend decent civilities, by bringing or sending in gratuitously, orders brought to him by old customers of Hinman & Co., some of which orders were given while he was negotiating sales of wares for plaintiffs in error. It requires no great experience in men to know, that an agent who should be churlish enough to refuse such favors would not be a very popular canvasser. The Court very rightly declined to regard this as any violation of duty in itself, and the jury were sufficiently cautioned to give the employers the full benefit of protection from anything that could have damaged them.

There is no error in the proceedings, and the judgment must be affirmed with costs.

The other Justices concurred.