## UNITED STATES v. ELLSWORTH.

The ruling in *United States* v. *Lawson* (*supra*, p. 164), that a collector of customs, who, pursuant to the peremptory order of the Commissioner of Customs, pays into the treasury moneys to which he is lawfully entitled as a part of the fees and emoluments of his office, is not precluded from recovering them in a suit against the United States, reaffirmed and applied to this case.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*The Solicitor General* for the United States.

*Mr. J. W Douglass, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Goods imported at the period mentioned in the declaration might be stored, under the warehouse acts, in the public stores legally established at the port of which the petitioner is collector.

Due indemnity to the United States was given by the railroad company, at whose request the public stores in this case were established, against loss arising from decay, waste, or damage to the goods there deposited.

Moneys to a large amount, as specified in the declaration, were paid to the petitioner, as such collector, to reimburse the treasury for the salaries of inspectors having charge of the goods deposited in such stores. Pursuant to the act of Congress, the collector rendered, under oath, a quarter-yearly account to the treasury of the sums of money collected for rent and storage beyond the rent paid for the stores to their owners. 5 Stat. 432; Rev. Stat., sect. 2647.

Statutory requirement also exists elsewhere that all moneys received by collectors for the custody of goods in bonded warehouses shall be accounted for as storage, under the fifth section of the prior act. 14 Stat. 188. Such requirement is enforced by a penalty, as follows: That every officer or agent who neglects or refuses to comply with the same "shall be subject to be removed from office, and to forfeit to the United States any share or part of the moneys withheld to which he might otherwise be entitled." Rev. Stat., sect. 3619.

Yearly payments of the same, as the petitioner alleges, were made by him through mistake, and that he made application to the commissioner for leave to correct his account; but the commissioner refused the request, and declined in advance to repay the petitioner any part of the said moneys.   What the petitioner alleges in that regard is that a part of the money derived from that source, not exceeding $2,000 in any one year, belonged to him, under the act requiring accounts as to rent and storage.·

Annual payments on that account were made by the petitioner, as he alleges, for the period of eight .years during which · he held the office, amounting in all to the sum of $14,535.23. Maximum compensation of his office is $4,500, as follows : Salary, fees, and commissions not exceeding $2,500.   Rev. Stat., sect. 2675.   Nor exceeding $2,000 in any one year from rent and storage.   Id., sect. 2647.      .

Out of the annual receipts for rent and storage the plaintiff claims an amount not exceeding $2,000 in any one year, to which he adds the entire receipts from all other sources of emolument, and from the aggregate of these receipts he deducts the amount·of his yearly compensation, and by that mode of computation his claim is as stated in the declaration.

·Two pleas were filed in behalf of the United States: 1. They deny each and every allegation of the petition.   2. They allege that the petition was not filed within six years after the claim first accrued.

Charges barred by the Statute of Limitations were rejected, and the court below rendered judgment in favor of the petitioner for the balance, amounting to the sum of $11,954.73, as appears by the transcript.

Special findings of fact were duly filed in the record, as required by the rules of the court, to the effect following : That the petitioner was collector of the port from March 5, 1870, to Jan. 25, 1878, and the act of Congress shows that the maximum of his compensation was as stated in his petition ; that two freight depots are located at that port, and that from the . time the petitioner became collector, to June 15, 1877, the apartments of the depots were constantly and exclusively used for the storage of goods in bond, seized goods, ·and goods unclaimed.

Compliance with the treasury regulations in establishing such depots is also shown by the findings of the court, and that two inspectors were constantly kept there in charge of goods stored in those depots during that period, and that the amount of their salaries was annually reimbursed to the United States through the collector by the railroad companies at whose request the depots were established, as shown by the statement exhibited in the fifth finding of the court. All these amounts were duly entered in the quarterly accounts of the petitioner, and were paid to the treasurer of the United States in compliance with official instructions.

Peremptory instructions were given to the officer that all moneys of every description, not received by warrant on the treasury, must be actually deposited, as they would be charged in the collector's account. His compensation, as received, was derived wholly from the other statutory sources of emolument, the findings of the court showing that he was not paid any thing out of the yearly amounts collected from rent and storage. Due credit was given for the annual amounts he received from the other sources of emolument during the six years, within the Statute of Limitations, as exhibited in the seventh finding of the court; and the same finding also contains a statement showing the additional amounts required for each of those years to bring up the compensation of the collector to the maximum rate.

Argument to show that the aggregate received from all sources of emolument, including the receipts from rent and storage, is sufficient to justify the claim of the petitioner is certainly unnecessary, as it is clear to a demonstration that the computations of the court below are correct. Plainly it follows from those computations that the collector is entitled to that rate of compensation, unless it be denied that the receipts from rent and storage, as explained in the opinion in *United States* v. *Lawson* (*supra*, p. 164), are not properly included in that aggregate.

Sums received for rent and storage, not exceeding $2,000 in any one year, if duly included in the quarterly accounts of collectors, are as much due to such officers of the non-enumerated ports as to the incumbents of the larger offices, and their right to the same rests on the same foundation. Actual necessity has

always existed, since the Treasury Department was' established, for more storehouses for the deposit and safe-keeping of imported merchandise than the United States owned, and it cannot be doubted that all such as have been placed under the statutory control of collectors and have been used for that purpose according to law are, during the period they are so controlled, used, and occupied, public storehouses, within the meaning of the act of Congress requiring collectors to include receipts from that source in their quarterly accounts, and allowing them to retain out of the same a sum not exceeding $2,000 in any one year. *United States* v. *Macdonald*, 5 Wall. 647, 659; s. c. 2 Cliff. 270, 282.

None of these matters are controverted by the Solicitor-General; but he insists that the payments were voluntary, and that the accounts having been settled cannot be opened, even if it appears that the demand and payments were both made under a mistake of law. Responsive to the first suggestion, the same answer may be given to it as that given by the court to a similar suggestion in the preceding case.

You will also bear in mind, said the commissioner, that all moneys of every description, not received by warrant on the treasury, must be actually deposited. Had he added, If you fail to comply, the law will be enforced, his meaning could not be misunderstood, as the act of Congress provides that the gross amount of all moneys received from whatever source for the use of the United States, with an exception immaterial in this case, shall be paid by the officer or agent receiving the same into the treasury at as early a day as practicable, without any abatement, &c. Rev. Stat., sect. 3617.

Penalties are prescribed for a non-compliance with that requirement, as follows : Every officer or agent who neglects or refuses to comply with that provision shall be subject to be removed from office and to forfeit any part or share of the moneys withheld, to which he might otherwise be entitled. 14 Stat. 187 ; Rev. Stat., sect. 3619.

Viewed in the light of these penal provisions, the payments in question made under the peremptory order of the commissioner cannot be regarded as voluntary in the sense that the party making them is thereby precluded from maintaining an action

to recover back so much of the money paid as he was entitled to retain. Call it mistake of law or mistake of fact, the principles of equity forbid the United States to withhold the same from the rightful owner.

*Judgment affirmed.*