POLK COUNTY, Appellee, v. JAMES PARKER, Appellant.

**OFFICERS: Rights, Etc.—Ownership of Documents Made During Official Term.** Maps and plats of a city, made by a city assessor, wholly outside of office hours and without detriment to his official duties, and neither made under any requirement of law, nor made as part of his required official duties, nor made, primarily, to facilitate the work of his office, but used therein because of their usefulness, are the private property of the assessor, even though, in their preparation, he used paper which had been discarded by the county.

**PRINCIPAL AND AGENT: Mutual Rights—Right to Outside Earnings of Agent.** A principal is not entitled to that which his

agent may earn during time which does not fairly belong to the principal. So held where a county claimed maps and plats made outside of office hours by a city assessor.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

SATURDAY, DECEMBER 16, 1916.

ACTION of replevin, to recover something like 601 maps and plats of real estate in the city of Des Moines, showing the location of buildings and other improvements thereon, which said maps and plats, it is claimed, were used in the office of and by the city assessor of the city of Des Moines.

The defendant denied plaintiff's ownership of the maps and plats, claimed that they were his individual property, planned, executed and draughted by him while he held the office of city assessor, during a time while he was not engaged in official duties, for his own use and purposes; that he used the same to facilitate the work of his office, but that they were no part of the records thereof; and that he is entitled to the possession thereof. On these issues, the case was tried to the court, without a jury, resulting in a judgment finding the county entitled to the property in controversy, and defendant appeals.—*Reversed.*

*J. L. Witmer,* for appellant.

*George A. Wilson* and *Ward C. Henry,* for appellee.

DEEMER, J.—I. From some time in the year 1889, down until April of the year 1908, defendant was employed in the tax department of the county auditor's office, of Polk County,

1. OFFICERS: rights, etc.: ownership of documents made during official term.

Iowa. On the last named date, he was appointed city assessor for the city of Des Moines, and served in that capacity until the fall of the year 1911. During his employment with the county, he became convinced that a new city map was needed, and concluded that, as soon as he had

leisure, he would prepare the necessary data, plats and maps to that end.

He accepted the city assessorship, on the theory that he would have the time, while in that office, to make the preparation necessary to the getting out of a new city map. Soon after entering upon the work as assessor, he began the preparation of this material, and obtained from the county auditor some leaves from the pages of an old discarded county plat book, upon which to make his maps and plats. From his own funds, he purchased the ink and other materials necessary to the making of the maps and plats, and did all the work upon them himself. He claims that he did this work before and after office hours, and at times when it did not in any way interfere with his official duties. He did not make the maps or plats primarily to facilitate the work of his office, and the blue prints required by law were furnished his office, and by him returned to the county auditor's office. It was discovered that the maps and plats made by defendant in the manner stated were of material assistance to defendant and his deputies in making assessments, and, with defendant's permission, they were used by the entire force, the blue prints being practically disregarded. The maps and plats were not made pursuant to any requirement of law, and they do not belong to the county, unless it be found that they were so made as to make them county property. In other words, there is no statute which requires the assessor to either make or file any such maps and plats.

Defendant resigned his office, and took the maps and plats with him. Thereafter, the county sued out a writ of replevin, and secured the possession of the maps and plats, and, since that time, they have been used by the city assessors in the performance of their work.

The county claims that it is entitled to the possession of this property, because it is upon paper belonging to it, was made by an official in the performance of his duty, or at a time when it was entitled to the services of Parker, and

from the records in the county offices, and that defendant has no title or right to the possession thereof.

On the other hand, defendant insists that the property does not belong to the county, but to him, individually; that he made the maps and plats outside of office hours, used time which belonged to him alone, ·in their preparation; that he was not required to do this work as a part of his official duties, and that the county has no right thereto; that they are his private property, which should not be taken from him. It will be remembered that defendant was a county or city official, and not a mere servant, who was required to give his entire time to his master. As an official, he had certain specific duties to perform, and none other could be required of him, save as the legislature might direct or authorize. Like other officials, he had certain office hours, and these he observed. According to the testimony, he did all the work upon these maps and plats outside of office hours, and what he did in no manner interfered with his official duties. In fact, the testimony shows that, by the use of these maps and plats, the work was expedited. Under the facts which are practically undisputed, the only question is—Who owns and is entitled to the possession of these maps and plats?

The rules applicable here differ a little from those obtaining where the relation is purely that of master and servant. An official is entitled to his salary as a matter of law, and the relation does not grow out of contract. His duties are fixed by statute, and, when these are performed, he is not required to do more. If he does do more, he is entitled to the profit thereof on his own account. *Fitzsimmons v. City of Brooklyn,* 102 N. Y. 536; *Davis v. Munson,* 43 Vt. 676; Mechem on Public Officers, Secs. 855, 872.

As already pointed out, the law did not require the making of these maps and plats, and, consequently, there was no provision for their return to any office or officer. They were not made primarily to assist in the performance of the work of the office, and they were not made pursuant to any

duty owed either to city or county. The mere fact that they were made on paper taken from an old book belonging to the county, will not authorize the county to take them from the defendant, after he has expended his time and labor thereon. In this connection, it is to be noted that several witnesses testified that these maps and plats are worth something like $1,500. Surely, the county cannot be permitted to avail itself of this work of the defendant's, simply because it owned an old discarded plat book, from which the paper was taken to make the maps and plats. See, as sustaining this view, 1 Cooley on Torts (3rd Ed.), p. 74; *Wetherbee v. Green,* 22 Mich. 311. We are constrained to hold that, as defendant did not make the maps and plats in controversy because of any statutory duty, and was not required to do so as a part of his official duties, and as he made them at such times and during such periods as not to interfere with his official duties, the maps and plats are his, and he is entitled to recover the same.

II. Aside from the question of defendant's right, as a public officer, to retain the maps and plats, we are constrained to hold that, even were he nothing more than a servant or

2. PRINCIPAL AND AGENT: mutual rights: right to outside earnings of agent.

ordinary employee, he would, under the facts, be entitled to the property. The rule with reference to ordinary servants and employees in this connection is announced by Mechem, in his work on Agency (2d Ed.), Vol. 1, Secs. 1230, 1232, as follows:

"Even if the rule were that the principal is entitled to the outside earnings of an agent who has undertaken to give him his entire time and effort, it would not, of course, apply to earnings made in time not fairly belonging to the principal, and in no way affecting his interests. As has been pointed out in one case (*Geiger v. Harris,* 19 Mich. 209), there must, in practically every business, be seasons of leisure and circumstances under which the principal's business cannot be done. What the agent earns at such times, in no way con-

nccted with the principal, or injuring the service, the principal will not be entitled to recover."

"Sec. 1232. The amount of time which an agent is required to devote to his principal's interests in order to satisfy the requirement of loyalty, must, of course, depend upon the circumstances of the case. . . . Where there is no such agreement (i. e. to give 'entire time'), a general rule is difficult to state other than there shall be a fair and reasonable devotion to the business of the principal."

In *Hillsboro Bank v. Hyde,* 75 N. W. 781, the Supreme Court of North Dakota said:

"The utmost scope of the contract, as they swear to it, is that defendant was to give all of his time to the bank. Such an agreement is widely different from that which plaintiff has set forth in its complaint. A contract to give all of one's time to the employer does not mean that outside earnings of the employe are to belong to the employer. The servant cannot devote himself to his own business at the expense of his master without violating his contract. But his personal earnings are his own. There is no evidence in the case that the defendant neglected his duties as cashier, in the performance of the work in which such outside earnings were made. . . . What his testimony means is that defendant was to give the bank the benefit of his whole time in and about the legitimate business of the bank. We do not think that he intended to say that it was understood that if defendant, in spare moments, wrote a book, or taught a night school, or sang in a church choir, the fruits of his extra toil on his own behalf should be swept into the tills of the bank."

In *Geiger v. Harris,* 19 Mich. 209, the Supreme Court of that state said:

"The claim of the plaintiffs in error is placed upon the assumption that an agent employed as Harris was, is during the agency so bound to his employers that all of his time belonged to them, and all of the profits and fruits of his labors or occupations, of whatever kind belonged to them and not

to him, so that any use of his time for any but them is a violation of duty. This is a doctrine that cannot be admitted, in regard to free persons. The charge of the court below was correct, and the rule laid down is sensible and fair. An agent violates his duty if he neglects to use all reasonable and thorough diligence to further the interests of his employers. He also violates it still more plainly by doing or furthering any business which can in any way hinder or compete with theirs. But there must be seasons of leisure, and there may be circumstances under which their work cannot be done. And in doing their work, he may find it profitable for them to secure bargains or advantages by civilities and services which can in no way prejudice them. They have no claim against them except for faithful service. In everything else, subject to this, he is his own master, and may do what he pleases, so long as they are not prejudiced.''

See also *Wallace v. De Young,* 98 Ill. 638; *Jaffray v. King,* 34 Md. 217.

The trial court thought the case was ruled by *Dempsey v. Dobson,* 174 Pa. 122. In that case, a servant employed as a color mixer in a carpet factory, kept a record in a color book of the mixtures used in the manufacture of carpets, the recipes belonging to the master. It was held that the servant could not, on the termination of his employment, carry away the recipe books. Manifestly, this case was correctly decided; for the master had the right to protect its own formulas, and the work done by the servant who made the book, was a part of his duty as a servant.

Other cases relied upon by appellee are not in point, because the servant acquired his claim of right while in the performance of his duties to his employer. In our opinion, the trial court erred in entering judgment for plaintiff, and the judgment must be, and it is—*Reversed.*

EVANS, C. J., LADD and WEAVER, JJ., concur.

PRESTON, J., dissents.