F. A. BURLINGAME, Appellant, v. HARDIN COUNTY, Appellee.

**PAYMENTS: Recovery of Payments—Voluntary Payments—Agree-
1  ment for Return.** Funds which legally belong to a public officer, but which are by him turned over to the public treasury on demand of the managing authorities, on the claim that such funds

belong to the public, may be recovered by the officer making the deposit, when the deposit was made with the express or implied agreement that they should be returned to the officer in the event that the holding of the court as to the ownership of the funds was in the officer's favor.

**PAYMENTS:** Recovery of Payments—Voluntary Payments—Strict
2     Construction of Rule. Principle recognized that the rule that "voluntary payments made under a mistake of law may not be recovered," will not be stringently applied except in cases coming clearly within the scope of the rule, nor will it be applied in those cases where to so do would clearly work inequitable results.

**OFFICERS:** Compensation and Fees—Non-Official Fees—Clerk of
3     Court as Referee in Probate. Compensation received by a public officer for the performance of duties which are in no wise imposed upon him as a part of his official·duties, belongs solely to the officer, and not to the public. So held as to fees received by the clerk of the district court as referee in probate under Sec. 3393, Code, 1897, even though the order of appointment specified the appointee as "clerk of the district court."

**EXECUTORS AND ADMINISTRATORS:** Account and Settlement
4     —Appointment of Referees. The appointment of referees in probate under Sec. 3393, Code, 1897, for the purpose of examining probate reports, etc., need not be a separate appointment for each and every report presented, but may be in the form of a standing order for all reports.

*Appeal from Hardin District Court.*—R. M. WRIGHT, Judge.

THURSDAY, SEPTEMBER 20, 1917.

The opinion sufficiently states the case.—*Reversed.*

*Lundy, Peisen & Soper,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assistant Attorney General, and *C. A. Bryson,* for appellee.

WEAVER, J.—The facts material to the disposition of this case are undisputed. The plaintiff was the duly elected, qualified and acting clerk of the district court of Hardin County for two or more terms.

1. PAYMENTS: recovery of payments: voluntary payments: agreement for return.

During the period of such service, acting under the order or appointment of the district court, he at different times performed the duties of referee for examination of reports made to said court by executors, administrators and guardians, for which services he was allowed compensation in the form of fees taxed and allowed as costs in the several cases so examined and reported upon by him. In the aggregate, the compensation so earned and received by plaintiff amounted to $1,615. The county, by or through its proper officers, claimed that the moneys so received were a part of the emoluments of the clerk's office, to be accounted for and paid over to the county treasurer, though the clerk held them on the theory and in the belief that they belonged to him individually, and not as an officer of the county. Demand being made upon him to make such payment and accounting to the county treasurer, plaintiff delivered or paid to or deposited with the treasurer the sum of $615 in money, and his demand promissory note for $1,000, accompanied by a written statement that such payment or deposit was for the amount he had received for his services as referee, which he had withheld under the belief that such collections belonged to him personally, and that, in case said moneys should thereafter be found to properly belong to him, he would expect the same to be returned. The payment or deposit so made was accepted, and the amount has been retained by the county or its treasurer. Thereafter, plaintiff instituted this action at law to recover said amount, alleging in his petition that said moneys were received from him by the treasurer, with the understanding that the right thereto was to be determined thereafter, in a proper proceeding for that purpose.

To the petition setting up the foregoing facts, the defendant demurred, on grounds as follows:

1. That, by the statutes of the state, any officer

wilfully taking higher or other fees than are allowed by law is guilty of a misdemeanor; that it is also provided that the clerk shall report to the board of supervisors all fees received by him and pay the same to the county treasurer; and that the salary of $1,400 in counties of the class in which Hardin County is included, shall be received as full annual compensation for all services.

2.   That the order of the district court under which the services were performed by the clerk was without authority of law, and therefore void and of no effect.

3.   That the money was paid voluntarily and under a mistake of law, and therefore is not recoverable in this action.

4.   That the court has no jurisdiction of the subject matter of the controversy, as the matter of the clerk's salary is fixed by statute.

The demurrer was sustained generally, and, the plaintiff electing to stand without further pleading, judgment was entered against him for costs.

I.   The appellee makes no argument in support of the proposition that the court was without jurisdiction of the subject matter of the controversy, and the point so made is evidently without merit.

It is argued, however, that the money sought to be recovered was paid by mistake of law only, and the defendant is not liable for its repayment.   While the petition is not drawn with technical nicety, we think that, as amended, it is not open to this objection.   Read as a whole, the declaration made in the petition is fairly open to the construction that there was a difference in opinion between the clerk and the board of supervisors or county treasurer upon the question of the right of the former to retain as his own the compensation paid him as referee, and that plaintiff paid over in money and note the amount demanded from him, with the understanding or agreement that if,

in a proper proceeding, his legal right to such compen-
sation was determined in his favor, the payment or deposit
so made should be returned to him. This does not bring
the case within the general rule that voluntary payments
of illegal demands are not recoverable by the payer, but
rather within the principle applied by this court in *Car-
ter v. Riggs*, 112 Iowa 245, and *Lyman v. Lauderbaugh*, 75
Iowa 481. See also *Harvey v. President, etc., of Olney*,
42 Ill. 336. In the *Lyman* case, it was held that, where the
defendant in an action voluntarily paid the plaintiff's
demand for the purpose of releasing an attachment, but
under a promise that plaintiff would repay the money if
defendant would show that he did not owe the debt, such
payment did not come within the rule above mentioned,
but that the promise to return the payment was supported
by sufficient consideration, and defendant could maintain
a suit for the recovery of the payment. In the *Carter*
case, Riggs demanded from Carter a full year's rent for
certain leased property. Carter admitted owing rent for
a shorter period only, and instructed his bank to pay such
sum. Riggs persisted in his demand, and the bank, to
facilitate its client's business, paid the full sum demanded,
but accompanied it with a letter saying that it would
leave the dispute as to the right of the matter "to be
adjusted later." Carter having brought suit to recover
the difference or overpayment, we held that Riggs re-
ceived the money subject to the reserved right of Carter
to maintain such action, saying:

"We know of no reason why such an understanding
may not be had, and the rights reserved enforced.  *   *   *
The clause, 'leaving difference to be adjusted later,' has
none of the elements of a protest. The wording of the letter
clearly indicates that a voluntary payment was not in-
tended."

See *Juneau v. Stunkle*, 40 Kans. 756. There is no

good reason why the same rule should not be recognized in this case. The plaintiff was a public officer, who had presumably given an official bond which he was bound to protect; the legal question between him and the county was one of some intricacy and importance, and had not been directly passed upon or expressly settled either by statute or the decision of this court. To refuse the demand made upon him was to invite possible charges of a criminal character against himself and civil suit against his sureties. An adjustment by which he could place the money or security in the hands of the treasurer, subject to repayment if he should succeed in establishing his personal right thereto, was both honest and fair, and the court should be slow to declare it of no effect. There is no reason in law or good morals why the county should, under such circumstances, be permitted to retain the money if, as a matter of law, it had no legal right to demand or exact it. The payment made, with the reservation of the right to try out the question in a civil action, protected the county perfectly, and at the same time gave plaintiff an opportunity to save himself from loss, in case his title to the money should finally be upheld.

2. PAYMENTS: recovery of payments: voluntary payments: strict construction of rule.

Even in the absence of such reservation, it is not at all certain that the mistake, if one was made, was so clearly one of law and not of fact as to bring it within the rule for which appellee contends. *Varnum v. Town of Highgate,* 65 Vt. 416. Courts are not inclined to apply the rule stringently except in cases coming clearly within its scope and effect, nor to so extend its application as to work clearly inequitable results. *Ward v. Ward,* 12 O. Cir. 59; *Pitcher v. Turin,* 10 Barb. (N. Y.) 436. Bearing very directly upon the phase of the case being here considered, see also *United States v. Lawson,* 101 U. S. 164 (25

L. Ed. 860) ; *United States v. Ellsworth*, 101 U. S. 170 (25 L. Ed. 862).

3. Officers: compensation and fees: non-official fees: clerk of court as referee in probate.

II.   The principal question argued by counsel goes directly to the merits of plaintiff's claim that the services for which he received the moneys in controversy were not rendered by him in his official capacity, and he is therefore not rightfully subject to defendant's demand for accounting and payment of such sums to the county treasurer.   It is true, as the defendant claims, that, under the statutes of this state, the clerk of the district court is paid a stated salary, and that all fees received by him for his official services belong to the county, and are to be accounted for and paid over by him to the county treasurer.   Code Supplement, 1913, Section 296.   The right of the county to demand and recover money received by the clerk depends solely upon the question whether such money has been received by him in his official capacity. A county officer does not contract to give all his time to the public service in any such sense that all the money he may earn or receive from any and every source during his term of office must be accounted for to the county.

"His duties are fixed by statute, and when these are performed, he is not required to do more."   *Polk County v. Parker*, 178 Iowa 936.

If, for example, he receives payment or fees as a witness in a civil action, or for service as one of a board of arbitrators, or as clerk of an election board, or as laborer in the harvest field, or indulges in literary work for which he receives more or less in royalties, or, being a merchant or banker or mechanic, wins profits wholly disconnected with the duties placed upon him by statute, no one would soberly contend that the county or any of its officers could rightfully lay claim to any part of the income or earnings so accruing.   In each and every case cited and

relied upon by the appellee, the right of the county to compel an accounting by the clerk has been exercised solely upon the admitted or proved fact that the moneys in question were received by him in his official capacity. In *Moore v. Mahaska County*, 61 Iowa 177, the fees earned by the clerk for serving upon the Commissioners of Insanity were held to come within this description, because the statute expressly imposed that duty upon him in his official capacity. In *Rhea v. Brewster*, 130 Iowa 729, it was held that interest upon moneys deposited with the clerk did not belong to him individually—a very self-evident proposition. In *Board v. Dickey*, 90 N. W. 775, a Minnesota case, the fees sought to be retained by the clerk were statutory, and therefore to be accounted for by him, and it was held that the furnishing of copies and certified statements by him from his records were services rendered "in his official capacity." Such also is the effect of *Finley v. Territory ex rel. Keys*, (Okla.) 73 Pac. 273, where the fees claimed by a county judge were for the performance of duties imposed upon him by statute. In *State v. Kelley*, 46 N. W. 714, the Nebraska court held that the clerk, being empowered by statute to perform certain acts, could not evade its effect by doing those acts as a notary public. In *Mulcrevy v. City and County of San Francisco*, 231 U. S. 669, under a statute requiring the clerk to account for and pay over "all moneys coming into his hands as such officer, no matter from what source derived," he was held not entitled to retain fees received in naturalization cases, because such fees were received "in compensation for official acts, not personal acts." Indeed, that conclusion is so manifestly right and unavoidable that it is a source of surprise that the contention there asserted in behalf of the clerk should ever have been raised. Other cases cited to this end and not here specifically mentioned all

fall within the same class, and announce no other or different rule.

We have, then, still to consider wheth-

4. EXECUTORS AND ADMINISTRA-TORS: account and settlement: appointment of referees.

er, in performing services as referee under the appointment of the district court, the plaintiff was acting in his official capacity as clerk. By statute, Code Section 3393, it is provided that:

"In matters of accounts of executors and administrators, the court may appoint one or more referees, who shall have the powers and perform all the duties therein of referees appointed by the court in a civil action."

It is argued for the defense, among other things, that the appointment of the plaintiff in this case was in the form of a standing order, signed by the several judges of the district, and sought to be made applicable in all probate cases, when in truth, as counsel contended, the statute confers such authority on the court only, and not on the judges thereof, and it is to be exercised, if at all in probate cases, severally and not collectively. From this premise it is said that the referee's fees in question were exacted wrongfully and without authority, and because thereof plaintiff cannot recover. In our judgment, there can be no question of the validity of the order of appointment. The probate court is always open for the transaction of business not requiring notice, and the usual, if not necessary, manner of making orders in probate, except those made in term time, is reducing them to writing, attesting them by the judicial signature, and filing the same with the clerk; and such appears to be what was done in this case. Nor do we think it any undue extension of the authority given by the statute for the court to provide that all reports of administrators and executors should be submitted to the examination of the referee so named. The enactment of the statute was doubtless prompted by the

fact, well known to lawyers and trial courts generally, that the time available for such purposes in open court is entirely inadequate for the careful and thorough examination required to insure proper and intelligent action upon such reports, and that, without the aid of a master or referee, much injustice is likely to be done, and grave abuses may escape detection and correction. These conditions can be best met only by the selection of competent persons to give each and all reports of such trusts the time and attention which they reasonably require; and, so far as we have observed, the district courts of the state have construed and acted upon the statute referred to as authorizing orders substantially such as was made in the instant case. That construction appears to be reasonable, and we are disposed to give it our approval.

It is further argued that, as the order in question appoints the clerk of the court referee, mentioning his official station only, and not naming him individually, it follows that whatever he received. as referee under such appointment was earned in his official capacity. But this does not follow. The court could add nothing to the duties of the clerk, as such, over or beyond that for which the statute expressly or impliedly provided. If, for example, the parties to a litigation should report to the court their desire to have their case referred, and their agreement that the clerk should be named the referee, and thereupon the court should enter an order, saying in substance, "By agreement of the parties, this cause is referred to the clerk of this court to hear, try and determine the issues joined, and report his findings of fact and conclusions of law thereon,"—would the fact that the court's order designates the referee solely as clerk, and not by his proper or individual name, have the effect to render him liable to the county for whatever fee or compensation he might receive for the service so performed? We are

very clear that such a conclusion would be wholly un-
warranted. The words, "clerk of the district court," in
such cases would be merely *descriptio personae,* and have
no other or different effect than would follow had the name
of his office not been mentioned, and he had been described
by his proper name. The statute nowhere imposes upon
the clerk the duty to examine and pass upon probate
reports. That is a judicial function with which he is not
clothed; and, while it is doubtless within the authority of
the district court to clothe him with such authority by
naming him as referee, the authority is derived from such
appointment, and not from his official character as clerk.
This being true, we think it follows of necessity that
fees or compensation so earned are not chargeable to him
as fees or emoluments of his office. Quite in point is
*St. Louis Union Trust Co. v. Texas Southern R. Co.,* (Tex.)
126 S. W. 296, where the court named the clerk as cus-
todian of property and to perform other services not re-
quired of him by law as clerk, and it was held that he was
entitled to receive individually the compensation so earned.
To the same effect see *Alcorn v. State,* 57 Miss. 273. There
is a Federal statute, U. S. Rev. Stat., Sections 1763 to 1765,
inclusive, prohibiting the allowance of additional pay or
compensation to public officers. It has been held that a clerk
who has performed services as a United States commissioner
may charge and receive payment therefor without violat-
ing such statute, as the duties of the two positions or em-
ployments are not incompatible. *Erwin v. United States,*
37 Fed. 470. The same general question has been quite
elaborately considered by the Indiana court in *State v.
Flynn,* (Ind.) 69 N. E. 159. There the clerk had received
payment for services rendered in preparing copy for the
ordinary term docket for the convenience of the court and
bar, and it was sought to compel him to account for and
repay to the county the moneys so received. The claim was

held to be without merit, on the theory that, even though such service was ordered or authorized by the court, it was not a service made incumbent on the clerk by law, and that, in performing the same, he was not acting officially, and the compensation received therefor could not be considered fees or emoluments of his office. It is there said (page 162) :

"The court, under the circumstances, has as much power to have employed any competent attorney at law or other person to this work as it had to employ Flynn. * * * If immediate necessity had arisen for the repair of the elevator to the court room, and the court had employed him to make the necessary repairs, and allowed him therefor a reasonable compensation out of the county treasury, in reason it could not be asserted that he rendered official services in making such repairs, and must account to and pay over the money so received to the county, by reason of the mere fact that, at the time he performed the work, * * * he was the incumbent of the office of clerk. * * * We are of the opinion that the court, if the necessity arose, had the power to employ Flynn unofficially to prepare and arrange the hand dockets for the use and purposes of the court, and had the authority, therefore, to allow him a reasonable compensation for such services out of the county treasury, as court expenses. Consequently, the money allowed him under such circumstances would be his own, and he would not be required to turn it over to the county."

See also, from the same court, *State v. Shutts,* (Ind.) 69 N. E. 397. Mr. Mechem, in his work on Public Offices and Officers, Section 863, lays down the general rule that the incumbent of an office is not rendered legally incompetent to discharge duties clearly extra-official, or outside of the scope of his official duty. The mayor of a city, being a lawyer, and employed to defend the city in a law suit, has been held entitled to recover reasonable compen-

sation, notwithstanding his official relation to such city. *Mayor v. Muzzy*, 33 Mich. 61.   The court there says:

"He was no more required, in consequence of his official position, to employ his time and talents as a counselor at law in conducting a suit brought against the city, than he was to pay the debts of the city out of his own private funds."

Indeed, we think this question is fairly ruled by the principle in our own recent case, *Polk County v. Parker*, supra. We find no apparent confusion in the precedents upon the proposition that, while the duty of a clerk to account for the fees and emoluments of his office extends to and includes every item of compensation received by him for services rendered in his official capacity, he is under no requirement to account for or pay over any compensation received by him for services performed otherwise than in his official character.   The statute prescribes the nature and extent of his official service and the fees which may be demanded therefor; and, if the law imposes upon him any particular duty for which no fee or compensation is provided, he is bound to perform the same without fee or charge.   But he is not by law disqualified from performing extra-official service and receiving payment therefor in his individual right, so long as the thing done by him is not incompatible with the duties which he assumed in taking the office.

The ultimate and decisive question is, therefore, whether the money in controversy was received by plaintiff in his official capacity as clerk of the district court.   Upon the facts admitted by the demurrer, and under the statutes and precedents which we have cited, this question must be answered in the negative.   The statute neither expressly nor by implication imposes upon the clerk the duty of referee.   The authority to appoint a referee is by statute conferred without restriction upon the district court.   The court is at liberty to appoint any competent person for

that purpose, and the power of appointment implies power to provide for reasonable compensation to the person accepting it and performing its duties. In the absence of statute authorizing or requiring it, the court is without power to make service as referee an official duty of the clerk, to be performed by him without compensation. There is no statute forbidding the clerk's appointment to such position, nor does there appear to be anything inhering in the situation which renders such appointment improper. The appointment was made, the service performed, and the compensation fixed by the court has been paid. Money so earned is not within the terms of the statute which requires the clerk to account for the fees of his office and pay the same over to the county, and, upon the record as made, the plaintiff is entitled to a recovery.

The ruling and judgment of the trial court upon the demurrer are therefore reversed, and the cause remanded for further proceedings in harmony with this opinion.— *Reversed.*

Gaynor, C. J., Preston and Stevens, JJ. concur.