WILLIAM H. JURGENS, appellee, v. DAVENPORT, ROCK ISLAND AND NORTHWESTERN RAILWAY COMPANY, an Iowa corporation, appellant.

No. 49362.

(Reported in 88 N.W.2d 797)

MARCH 11, 1958.

Lane & Waterman, of Davenport, for appellant.

Lowry & Broderick, of Davenport, for appellee.

THOMPSON, J.—On March 17, 1954, the plaintiff was in the employ of Vogel Roofing Company and was at the time engaged in unloading roofing material from a boxcar located on a siding in Davenport. Employees of the defendant were engaged in switching on near-by tracks, and through some mistake permitted a string of three cars to enter the siding where plaintiff was at work. These cars struck the car in which plaintiff was employed, injuring him. No question is raised on this appeal as to the negligence of the defendant.

The defendant assigns three errors relied upon for reversal. The first is that the court erred in refusing defendant's Requested Instruction No. 3 and in giving its own Instruction No. 29 over defendant's objection, and in denying Ground No. 9 of defendant's motion for new trial. Involved in each of these rulings is the effect of a certain ordinance of the City of Davenport governing the conduct of policemen. The second assigned

error is that the verdict, in the sum of $12,124.38, was so excessive as to show passion and prejudice on the part of the jury; and the third error alleged is the refusal of the defendant's request to call members of the trial jury for examination as to whether the verdict was in fact a quotient verdict. We shall discuss these in the order of 1, 3 and 2.

I. At the time of his injury the plaintiff was a member of the Davenport police force, under suspension for a reason not material to the issues here. His suspension ended on May 1, 1954, and the record shows that he immediately resumed his employment on the police force and had drawn full pay from the department from that date until the time of the trial. But he complained that he had before his injury and before his suspension worked during his off duty hours for the Vogel Roofing Company and other private employers for some years past, doing manual labor. Since the injury he testified he was unable to do heavy work that involved lifting, and found extreme difficulty in climbing steps. There is some evidence as to his earnings in these outside employments prior to the time of the accident.

It is the alleged loss of these potential earnings from employers other than the City of Davenport which raises the questions involved in Assigned Error No. 1 outlined above. At all material times there was in effect an ordinance of the City of Davenport which contains this provision: "* * * no member of the Police Department shall be allowed to perform any service for any private individuals, copartnership or corporations nor shall any such member receive any compensation from any source other than herein provided. * * *." It is the meaning, extent and legality of this part of section 7(d) of Ordinance No. 43 which has greatly engaged the efforts of counsel for the contending parties here. Rulings of the court in regard to it are the basis of all of defendant's complaints in its first assigned error.

We agree with the defendant that the ordinance quoted means what it says, that it was law in the City of Davenport, and that it is not arbitrary or unreasonable; but we do not agree with the effect claimed for it. Analyzing the contention made in the requested instruction, the exceptions to the court's Instruction No. 29, and the motion for new trial, we conclude that it

is defendant's position that, since the plaintiff has been able to perform his duties as a policeman and draw his full pay therefor, he is entitled to no allowance for loss of wages. We shall point out why this claim is not well founded.

First, however, we turn to the validity of the quoted portion of section 7(d) of Ordinance No. 43, which is attacked by the plaintiff. It is the general rule that no recovery may be had for loss of earnings in an illegal occupation, or for loss of profits in an illegal business. 25 C. J. S., Damages, section 38, page 512, and section 42(b), page 519; 15 Am. Jur., Damages, section 97, page 507; Murray v. Interurban Street Ry. Co., 118 App. Div. 35, 102 N. Y. S. 1026, 1027, 1028; Jacques v. Bridgeport Horse Railroad Co., 41 Conn. 61, 19 Am. Rep. 483; Shelley v. Hart, 112 Cal. App. 231, 297 P. 82, 87. In the latter case plaintiff claimed damages because of an alleged breach of a guaranty that a truck he purchased from the defendant would carry a load of a certain weight over the highways at a speed of twenty-eight miles per hour. Statutes of the state provided that a truck so loaded should not be driven at more than twenty miles per hour. The California court held no recovery could be had, since it would depend upon a breach of the statute. The rules laid down in C. J. S., and Am. Jur., above cited, were quoted with apparent approval in Soldano v. New York Life Ins. Co., La. App., 196 So. 521, 527.

A validly enacted ordinance is law within the limits of the enacting city. 62 C. J. S., Municipal Corporations, section 443, page 854. But the plaintiff seeks to avoid the effect of the ordinance in question by two contentions: that we have held that a public officer may devote time not required for the performance of his official duties to earning money in outside activities; and that if construed so as to prohibit all gainful employment by police officers during their off duty periods it is arbitrary and unreasonable. In support of the first ground, plaintiff cites such cases as Burlingame v. Hardin County, 180 Iowa 919, 164 N.W. 115, and Polk County v. Parker, 178 Iowa 936, 160 N.W. 320, L. R. A. 1917B 1176. It is a sufficient answer to these to say that they deal only with situations in which the outside occupation was not prohibited by statute or ordinance. In the case at bar section 5 of Ordinance No. 43, supra, con-

tained a general penalty clause making it a misdemeanor for any police officer to violate any duty required by the city ordinances or departmental orders or rules, with provision for a fine or jail sentence in case of conviction. Cases merely exemplifying the common-law rule that, in the absence of a specific prohibition, a public servant may engage in outside activity which does not interfere with his official duties are not in point.

Nor do we think the plaintiff has shown that the provision under discussion is so arbitrary or unreasonable as to be void. An ordinance is presumed to be reasonable and valid, and the burden is upon one who attacks it to show its unreasonableness. It must clearly appear to be invalid. Star Transportation Co. v. City of Mason City, 195 Iowa 930, 952, 953, 192 N.W. 873, 882, 892; Huston v. City of Des Moines, 176 Iowa 455, 478, 156 N.W. 883, 892. We find nothing in the situation before us which meets the burden of proving the invalidity of section 7(d), supra. The purpose of this provision is apparently to insure that the police officers will not have divided loyalties as between their public and private employers; that they will be available in case of emergencies as the ordinance requires, even when they are off duty; and that they will be in condition, both physical and mental, to perform their official functions when and as they should. A policeman who has worked for several hours at manual labor for a private employer may not be as efficient or alert in attending to the matters required of him as a peace officer. These considerations in themselves demonstrate that section 7(d), supra, is not so clearly arbitrary or unreasonable that we may strike it down.

But, although this provision of the ordinance is valid and it was properly admitted in evidence, we cannot give it the all-conclusive effect claimed for it by the defendant. The first assigned error relied upon for reversal is based upon the thought that, since it prohibits the earning of compensation for work outside the police department, and the plaintiff was, at least at the time of the trial, still holding his position as a police officer, he cannot recover for loss of such compensation. The error assigned is based upon the refusal to give defendant's Requested Instruction No. 3, upon the overruling of exceptions to the

court's Instruction No. 29, and upon the denial of that part of the motion for new trial based upon the same grounds. Since obviously the motion for new trial raised only the same questions involved in the denial of the requested instruction and the giving of Instruction No. 29, our determination of the correctness or error in the rulings upon the instructions will decide also the motion for new trial on the same points.

Defendant's Requested Instruction No. 3 is set out herewith:

"On March 17, 1954, there was and still is in force and effect in the City of Davenport, Iowa, an ordinance establishing and regulating the Police Department of the City of Davenport, which ordinance provides that no member of the Police Department shall be allowed to perform any service for any private individuals, copartnership or corporations, nor shall any such member receive any compensation from any source other than the City of Davenport, Iowa. The undisputed evidence in this case shows that plaintiff, from and after May 1, 1954, when his suspension expired, has been and still is a member of the Davenport Police Department and is governed by the ordinance mentioned. You are instructed that if you find for plaintiff, you shall not include in any award which you make, any sum representing loss of wages subsequent to May 1, 1954."

The court's Instruction No. 29 is also quoted:

"29. You are instructed that a City Ordinance of the City of Davenport, Defendant's Exhibit No. 3, has been admitted in evidence; but it has been admitted for one purpose only, and that is that you may consider it on the question of the future earnings of the plaintiff, if any, as a member of the Davenport police force, if you find from the evidence that he will continue to remain on the police force, and for the time he may so remain, if at all, and as to whether or not and to what extent, if any, plaintiff's earnings are or may be affected thereby, if at all, and you may consider the ordinance along with all the other evidence as to earnings and give it such weight, if any, as you may find it entitled to under the circumstances and evidence in this case. If you

should find that the said ordinance in no way affects the plaintiff's earnings, you may disregard it altogether."

To this instruction the following exception was taken:

"Defendant objects to the submission of Instruction No. 29 on the ground that the jury is therein instructed that it may disregard Ordinance No. 43 of the City of Davenport, Iowa, which has been offered and introduced and received in evidence as defendant's Exhibit 3, even though said ordinance in Section 7(d) thereof makes it illegal for a member of the police force to perform any services other than police services or to receive any compensation other than from the City of Davenport. Since the plaintiff is prohibited by law from earning any money outside his police services, the jury should be instructed not only that it must take defendant's Exhibit '3' into account but that it must exclude from any verdict any sum whatsoever based on loss of such outside wages or earnings."

It is apparent that the defendant's contention, raised by its requested instruction and by its exception to Instruction No. 29, is that the jury should have been told that the plaintiff could recover nothing for loss of outside wages or earnings. In making this claim, defendant goes too far. While the court's Instruction No. 29 may not be a model of clarity, and might perhaps have been vulnerable to other objections, we must measure it by the attack made upon it. Rule 196, R. C. P., gives us the law by which we must determine exceptions to instructions. It is provided therein that objections to instructions must be made before they are read to the jury, and "No other grounds or objections shall be asserted thereafter, or considered on appeal." The language is explicit, and we have applied it in many cases. Stupka v. Scheidel, 244 Iowa 442, 450, 56 N.W.2d 874, 879; Eggermont v. Central Surety & Insurance Corp., 238 Iowa 28, 33, 24 N.W.2d 809, 811. It is equally true that the complaining party must point out clearly to the trial court what he objects to in the instruction, and why; and his rights on appeal will be measured thereby, and cannot be extended.

██ With this rule in mind, we think the only point defendant is entitled to urge in this court is that the court should have told the jury plaintiff could not recover for any outside earnings. That is what it said. But the general rule in Iowa has long been settled that it is the present value of the loss or impairment of general earning capacity, rather than loss of wages or earnings in any specific occupation, that is material. It is the reasonable present value of the diminution of earning potentiality which the jury must determine, under the law in this state. We have said: "* * * it is the impairment of the capacity to earn money, generally, regardless of the kind of occupation, the lessening of the earning capacity, which is to be taken into account." O'Conner v. Chicago, R. I. & P. Ry. Co., 144 Iowa 289, 292, 293, 122 N.W. 947, 949.

The same rule is laid down in Greenway v. Taylor County, 144 Iowa 332, 339, 122 N.W. 943, 946, 947, in this language: "In other words, the loss of earning capacity or power generally, rather than in a particular avocation, is that for which compensation is awarded."

In discussing the same rule we find this statement from a later case: "Even if she was not, at the time of her injury, engaged in that work, her ability to do it was a resource of value, and if that ability was impaired or destroyed, it was a proper fact for consideration by the jury." Buffalo v. City of Des Moines, 193 Iowa 194, 201, 186 N.W. 844, 847. See also Morris v. La Bahn, 194 Iowa 377, 388, 189 N.W. 797, 801.

The Pennsylvania Supreme Court has stated the rule in these terms: "* * * in proving loss of earning power, as an element of damage in case of personal injury, lessened capacity to earn in any available occupation may be shown." Frysinger v. Philadelphia Rapid Transit Co., 249 Pa. 555, 560, 95 A. 257, 258, quoted with approval in Kenmuir v. Pittsburgh, 347 Pa. 156, 158, 31 A.2d 516, 517.

██ It seems evident that although the plaintiff here may not have been legally permitted to engage in outside work so long as he remained a member of the police force, he was entitled to show his lessened ability in other occupations as bearing upon his general impairment of earning capacity. There is no assur-

ance he will remain a police officer throughout the remainder of his life and anything having a legitimate bearing on his power to earn in any occupation that is or may be available was properly for the consideration of the jury. It is true the court's instruction did not make this abundantly clear, but since it was not attacked for this omission we are not concerned with it. All the facts—the present employment of the plaintiff, section 7(d) of Ordinance No. 43, the possibility of other work for plaintiff and his injuries—were proper to be presented, since each and all had a bearing upon the present value of the impairment of his general capacity to earn. A requested instruction and an exception to the court's instruction which did no more than to say that plaintiff should have been denied any recovery for loss of earnings were not well taken. It is true the court's instruction, after saying the ordinance should be considered only on the question of the future earnings of the plaintiff so long as he remained a member of the police department, then closed with the statement that if it was found the ordinance in no way affected such earnings it might be disregarded. This latter statement was challenged in the exception, but for the reason that "it (the jury) should be instructed not only that it must take defendant's Exhibit '3' (the ordinance) into account but that it must exclude from any verdict any sum whatsoever based on loss of such outside wages or earnings." This position was emphasized and made clear by the defendant in its motion for new trial, the relevant part of which we quote:

> "9. The court erred in refusing to submit defendant's Requested Instruction No. 3 and in overruling defendant's objections to the court's Instruction No. 29. The effect of these rulings was to permit the jury to award damages for loss of earnings in an unlawful employment, the undertaking of which would have constituted a misdemeanor on the part of plaintiff."

We think it sufficiently appears that the point sought to be made before the trial court was that no future earnings outside police work could be considered as an element of damages. In view of the well-established rule that it is the present worth of the impairment of general earning capacity that is material,

this contention was unsound; and regardless of other possible errors in Instruction No. 29 or the failure of the court to instruct the jury on the general rule last above cited the defendant's challenge at this point is without merit.

II. Defendant's Assigned Error No. 3 relates to the refusal of the trial court to call the jurors for oral examination. It must be conceded that the court was not required to do this unless there was some showing of misconduct on the part of the jurors, or at least some sufficient evidence that misconduct might appear. The only showing made to the court in connection with defendant's request is found in an affidavit of one of defendant's counsel, which we set out:

"I, James J. Lamb, being first duly sworn on oath state that subsequent to March 8, 1957, I talked with two of the trial jurors who sat on case numbered 40440 in the District Court of the State of Iowa in and for Scott County, entitled William H. Jurgens, plaintiff, vs. Davenport, Rock Island and North Western Railway Company, defendant. After the trial of said case, which commenced on March 6, 1957, a verdict was rendered by the jury at 8:34 P.M. on March 8, 1957, in favor of plaintiff and against defendant, in the amount of $12,124.38. The trial jurors, with whom I talked, in substance stated that after the jury retired and started deliberating there was a wide range in the amount of damages which various members of the jury stated should be awarded to the plaintiff; that the suggestion was made by a juror or jurors that a way to arrive at the amount of damages to be awarded to plaintiff was for each juror to state or write the amount he or she would allow and then add the said twelve amounts together and divide the sum so obtained by twelve. On information and belief affiant states that each juror did give an amount, and the amounts were added and then divided by twelve and the quotient so obtained was the basis for reaching the verdict mentioned in respect to damages, was added $124.38, which last mentioned amount, counsel stipulated during the trial, was the maximum amount of medical, hospital and X-ray expense which plaintiff could recover.

"On information and belief affiant states the verdict returned by the trial jury in the case on March 8, 1957, was a quotient verdict or verdict arrived at by lot and chance; that one of the jurors with whom I talked indicated that if the jurors were called into court that they would tell the facts concerning the method of arriving at the verdict returned in favor of plaintiff in the case and on the date mentioned.

"/s/ James J. Lamb."

 Plaintiff urges that a new trial should not be granted upon hearsay affidavits. This is the general rule. 66 C. J. S., New Trial, section 172, page 427; and see implication in Skinner v. Cron, 206 Iowa 338, 342, 343, 220 N.W. 341, 343. The defendant contends we are not dealing here with the sufficiency of the affidavit to require a grant of a new trial, but only with the question whether the court should have commanded the jurors to appear for oral examination. But we think the court should not be required, upon a hearsay affidavit, to order the jurors to appear for such examination unless, at least, the affidavit itself makes a clear showing of some misconduct sufficient to vitiate the verdict if the testimony adduced on hearing substantiates it.

 Rule 116, R. C. P., says: "Evidence to sustain or resist a motion may be by affidavit or in any other form to which the parties agree or the court directs. The court may require any affiant to appear for cross-examination." This seems to give the trial court some discretion in determining whether it will direct the taking of evidence to sustain a motion for new trial. At least we should not say it was in error in refusing to summon the jurors for oral examination upon a hearsay affidavit which in itself does not show some basis for a new trial. The affidavit set out above is quite evidently aimed at presumed misconduct of the jury in reaching a verdict by the quotient process. But it lacks the necessary elements for such a showing. It says that a suggestion was made that each juror state the amount which he thought should be allowed as damages and that the amounts so given should be added and divided by twelve. The affidavit then states this process was followed, and the quotient so ob-

tained was "the basis" for reaching the amount awarded.

It will be noticed that there is no statement that there was an advance agreement to accept the quotient as the jury verdict, nor was the quotient accepted as final after it had been obtained. It was merely "the basis" for the final amount. An agreement in advance to accept the amount reached by the adding and dividing process is essential to a true quotient verdict such as the law condemns. Klein v. Swift & Co., 248 Iowa 563, 567, 568, 81 N.W.2d 469, 472, 473, and cases cited. There must be such an advance agreement, and the final verdict must be induced by it. The situation made by the affidavit in the instant case is much like that which we found unobjectionable in Nicholson v. City of Des Moines, 246 Iowa 318, 331, 332, 67 N.W.2d 533, 541. It was merely a means by which the jurors determined the general average of thinking; and this is not misconduct unless there is an agreement in advance to accept it as the verdict, and this agreement is carried out. Lacking the advance agreement, the process is nothing more than a basis for discussion and, perhaps, for compromise of the differing opinions as to the proper amount to be awarded; a compromise which must be reached if any verdict is to be returned.

III. We come then to the question raised by defendant's second assigned error, the claimed excessiveness of the verdict. The amount to be allowed is primarily for the jury to decide. Jettre v. Healy, 245 Iowa 294, 302, 60 N.W.2d 541, 546; DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 49, 40 N.W.2d 4, 17 A. L. R.2d 826. Yet we have not hesitated to reverse or to affirm upon condition of a remittitur of a part of the amount awarded when the verdict seems clearly excessive. Christensen v. Des Moines Still College of Osteopathy and Surgery, 248 Iowa 810, 820, 82 N.W.2d 741, 747; Soreide v. Vilas & Co. 247 Iowa 1139, 1154, 78 N.W.2d 41, 50; Booth v. General Mills, Inc., 243 Iowa 206, 210, 49 N.W.2d 561, 563.

We conclude that the verdict here, while not so excessive as to show passion and prejudice requiring a new trial, is beyond the fair province of the jury to award upon the evidence before it. The total doctor and hospital bills of the plaintiff were in the sum of $124.38. He worked on the day of the injury for some two hours after it occurred. He saw his own doctor and

one or two others thereafter, but none of these was called at the trial. The two doctors who testified for him were orthopedic surgeons whom he visited two years or more after his injury, apparently in preparation for the coming trial. One of them, taking largely subjective tests, thought plaintiff has a "herniated" disc; the other that he has a "herniating" disc. The difference is a matter of degree. Both recommended conservative treatment by heat, medications, muscular relaxants, and possibly by a belt or other support. Dr. Robert J. Graham said only about ten per cent of the cases need surgery. Both doctors recommended what is known as a myelogram or oil test to determine whether the diagnosis of a herniated or slipped disc is correct; but the plaintiff has not undertaken such a test. So far as the record shows he has taken little or none of the "conservative" treatments suggested, and except for the visits to the two orthopedic surgeons above referred to he has not seen a doctor since shortly after his injury.

In the meantime he has continued with his police work regularly, although he complains he is sometimes in pain when performing it. It seems the amount awarded was not justified by the evidence and must have been reached in disregard of it. Comparisons of amounts approved or disapproved in other cases are not helpful, and there is no exact standard which may be followed. It is our best judgment, however, that any award for damages here in excess of $8624.38 is excessive. If within thirty days from the filing of this opinion the plaintiff shall file a remittitur of all in excess of $8624.38, with interest and costs, the judgment will be affirmed; otherwise reversed and remanded. —Affirmed on condition.

All JUSTICES concur except SMITH, J., not sitting.