CITY NATIONAL BANK OF MASON CITY, Appellant, v. INDEPENDENT SCHOOL DISTRICT OF MASON CITY et al., Appellees.

MUNICIPAL CORPORATIONS:  Public Improvement Bond for Benefit
1  of Subcontractors.  A public municipal corporation which exacts from its contractor for the erection of a public improvement a bond conditioned for the payment of all subcontractors, and reserves the right to withhold final payment until all contract provisions have been performed, may validly insist that said final payment be applied in the discharge of unpaid claims of subcontractors, even though such claimants have taken no steps to compel the corporation to withhold said payment (Sec. 3102, Code, 1897), and even though the contractor has, to the knowledge of the corporation, equitably assigned to a third party his right to said payments.

MUNICIPAL CORPORATIONS:  Public Improvements—Order to Pay
2  Funds to Third Party—Effect.  A written order by a contractor to the other party to the contract to pay all accruing payments to a third party, works, as between the drawer and said third party, an equitable assignment of the contractor's right to said payments, even though the drawee has never accepted the order.

CONTRACTS:  Several Instruments as One Contract.  Several instru-
3  ments which in form are separate and distinct, constitute but one contract, when interwoven by proper reference.  So held where a contract, certain specifications, and a bond, were held to constitute one contract, and, as a whole, to show that the principal in the bond had contracted to pay all subcontractors under the contract.

*Appeal from Cerro Gordo District Court.*—J. J. Clark, Judge.

November 26, 1920.

Suit in equity to recover upon an order from the defendant the Independent School District, as drawee, and from H. F. Jones, as drawer of the same, a balance on hand of moneys otherwise due defendant Jones. Jones was a contractor, who had constructed a public building for the Independent School District. There was a general denial by defendant, and a general plea that the funds in its hands were properly payable to other parties, who were subcontractors under Jones. Six of these subcontractors intervened in the action; likewise, the New Amsterdam Casualty Company intervened, as the surety on the bond of Jones. There was a decree dismissing the petition, and the plaintiff has appealed.—*Affirmed.*

*Blythe, Markley, Rule & Smith,* for appellant.

*Senneff, Bliss, Witwer & Senneff, Fowler, Schmitt, Carlson & Furber, D. H. Fitzpatrick,* and *H. F. Jones,* for appellees.

Evans, J.—I. Jones as "contractor," and the Independent School District as "owner," entered into a contract, whereby Jones undertook to erect a school building for the district. In the progress of the work, Jones borrowed money, from time to time, from the plaintiff bank. The plaintiff reimbursed itself by drawing from the district the moneys due Jones on the estimates of the architect, pursuant to a written order signed by Jones, which will be hereinafter set forth. The money borrowed by Jones from the plaintiff was used in the main in the payment of labor and material bills accruing in the performance of the contract. The building was completed and accepted. Before the district had parted with the 15 per cent reserved in its hands, it discovered unpaid claims for labor and material used in the building, to an amount totaling a greater sum than the balance remaining in its hands. None of these claimants, however, had presented or filed their claims within 30 days, as provided by Code Section 3102; but they did file them later.

1. Municipal corporations: public improvement bond for benefit of subcontractors.

Relying upon an alleged provision in the contract, the school district refused to pay the balance in its hands, until such claims for labor and material should be fully paid; or, as an alternative, it proposed, in effect, to apply the amount in its hands to the payment of such claims. These claimants are interveners. The other intervener is the New Amsterdam Casualty Company, which is surety on the bond of Jones. The first-named group of interveners filed a cross-bill against the surety company, asking for personal judgments against it for their claims respectively, and a cross-bill against the Independent School District, asking that the money in its hands be applied pro rata to the payment of their claims. In the latter claim, the surety company, as an intervener, joined; but it resisted the demand of such interveners for personal judgment against it. The district joined with the first-named group of interveners in the claim that the money in its hands should be applied to the payment of the labor and material claims.

The decree entered below applied the fund upon the labor and material claims, and entered personal judgment against the surety company for the balance of such claims remaining unpaid. The plaintiff alone has appealed. The surety company served notice of appeal too late. It is in court, therefore, as an appellee, and has filed a brief in support of the decree, in so far as the same applies the fund in the hands of the district upon the labor and material claims. It is apparent that the effect of that portion of the decree is to reduce the liability of the surety company *pro tanto*.

II.   The order sued on was as follows;

"Mason City, Iowa, Nov. 9, 1916.

"Board of Education, Independent District of Mason City, Ia.,
    "Mason City, Ia.

"Gentlemen:

"Please pay to the City National Bank of Mason City all moneys by estimates as they become due in the erection of the new high school building at Mason City, Ia. These estimates in the form of certificates will be delivered to you, either by me or by the said named bank after being issued by the architect or

of the proper authorities, and upon receipt of the same you will please pay the amount of the estimate to the above-named bank, and charge the same to my account.

"This order is given to the said bank for the purpose of covering funds which they have, or may advance to me from time to time in the payment of bills for material or labor arising out of, and on account of the construction of the new high school building for which I have the contract.

"This order is to remain in full force and effect until canceled by the above-named bank in conjunction with myself.

"H. F. Jones."

This order was filed with the Independent School District. It was never formally accepted by the Independent School District; nor, on the other hand, was it affirmatively repudiated. Sums of money were paid pursuant thereto, from time to time, during the period of a year or more, and while the building contract was in course of performance. Under the building contract, payments were to be made, from time to time, up to 85 per cent of the estimates of the architect, and 15 per cent was at all times to be retained until the full completion of the work. The unpaid balance represents the reserve 15 per cent, and amounts to approximately $9,500.

The appellee assails in argument the sufficiency of the order to show a cause of action in favor of the plaintiff, on the ground that it was not accepted, and on the further ground that, by its terms, it applied only to the 85 per cent of the estimates. It is perhaps enough to say that the sufficiency of the order was in no manner assailed by the defendant by any form of pleading in the court below. Furthermore, equity will deem the order to be an equitable assignment of the rights of Jones. *Hipwell v. National Surety Co.*, 130 Iowa 656. Nor can we say that the order indicates a purpose to confine the rights of the plaintiff to 85 per cent of the estimates. It does provide for successive payments from the "estimates." It was clearly intended to operate upon the future rights of Jones as such rights should accrue by performance of the contract on his part. Not more

than 85 per cent of the estimates could be drawn until after full performance.  This did not forbid the accruing of a right to the remaining 15 per cent upon full performance.  We think the order was, in equity, as between the plaintiff and Jones, sufficient to carry to the plaintiff all the rights of Jones, neither more nor less.  In other words, it is entitled in equity to stand in the shoes of Jones.

III.  The case is very logically argued on both sides,—to contrary results.  Respective counsel part company at the threshold of their premises.  The major premise of the appellant is that the contract between the district and Jones had no provision which required Jones to *pay* for his labor and material.  Taking this premise as true, there is no gainsaying the appellant's argument.  The major premise of appellee is that, under the contract, Jones did undertake to *pay* for labor and material.  Accepting this premise, we think it is equally true that there is no gainsaying the appellee's argument.  This, then, is the first question before us, and, being the vital one, can as well be deemed both first and last.  What was the contract?  Three instruments appear in the record, which are mutually related to each other by appropriate reference.  The first is an instrument which was signed by Jones and by the Independent School District, which is denominated a "contract."  The second is the so-called "specifications."  The "contract" in express terms made the "specifications" a part thereof.  The third instrument is the contractor's bond.  The form of the bond was included at length in the "specifications," and made a part thereof.  The bond actually signed was upon such form.  The provision, if any, whereby the contractor agreed to pay for labor and material, is contained in the bond, and in the form of bond included in the specifications.  The appellee treats this bond as a part of the contract.  The appellant treats the bond as separate and apart from the contract.  This accounts for the conflicting major premises upon which the case is argued pro and con.  The "contract" signed by the parties contained the following:

"The contractor shall and will provide all the materials and perform all the work for the erection of said building, as shown on the drawings and described in the specifications prepared by

3.  CONTRACTS: several instruments as one contract.

J. H. Felt & Co., which drawings and specifications are hereby made a part of this contract."

The specifications referred to above contained the following:

"The contractor to whom this work is awarded will be required to enter into contract for same and give acceptable surety company bond for one half the contract price, or personal bond for contract price, subject to the approval of the architects and owner, guaranteeing the faithful performance of said contract. Bond in all cases to be given on the following form."

The form of the bond was set forth complete in the specifications, leaving blank spaces therein for the names of the parties and for the amount of the bond. A bond was delivered to the district, duly executed upon this form by the contractor and his surety. Such bond so executed contained the following:

"Whereas, H. F. Jones, contractor, has contracted with the Board of Education of Mason City, Iowa, to execute, construct, complete and *pay* for all labor and material, whether by subcontract or otherwise," etc.

The foregoing was in literal conformity to the form set forth in the specifications, with the name "H. F. Jones" inserted in the blank space. The conditions of the bond were as follows:

"Now the conditions of this obligation are, that if the said H. F. Jones, contractor, shall duly perform said contract and fulfill all the several stipulations, then this obligation is to be void, but if otherwise the same shall be and remain in full force and virtue."

The "contract," the "specifications," and the form of the bond were all drawn by the architect, and were all in existence and before the parties at the time of the signing between the district and the contractor. The specifications were included in the contract by express reference, and the obligations of the required bond were included in full in the specifications. We see no room to doubt that the three papers constituted the contract. They all related to the same subject-matter and to each other. They all aimed at the common purpose. To eliminate any of them would leave the contract incomplete. Though the Independent School District signed the "contract" only, its signature bound it to nothing, unless the conditions of the specifications were acceded to, and until the bond was given in the

form set forth in the "specifications." Though the signing of the contract preceded in date the presentation of the bond, such contract did not go into effect until the presentation of the bond and the acceptance thereof. We must hold that all the provisions of these three instruments must be read together, in order to determine the obligation undertaken by the contract. It is argued for appellant that the recitals of the bond are not binding upon Jones, in so far as they exceed the recitals of the "contract;" that the omission from the contract of any obligation to *pay* laborers and materialmen indicates an absence of intention to incorporate such a provision. The fact that this provision was included in the "specifications," and that the specifications by reference were made a part of the contract, was of itself a sufficient reason why it should not be specifically set forth in the so-called "contract." None of the conditions of the specifications were set forth in such contract. Surely, repetition would add nothing to the obligation of the provision, though it might add emphasis thereto. We hold, therefore, that the contractor did obligate himself to *pay* for all labor and material.

As already indicated, this conclusion is quite decisive of the argument between the parties. The promise of Jones to pay gave to the labor and materialmen *contractual* rights which they could enforce against Jones and against his surety, even though they had failed to file their claims within 30 days, as provided by Code Section 3102. The case is quite covered in this respect by our previous decisions. *Independent School Dist. v. Mardis,* 106 Iowa 295; *City of Boone v. Cary,* 162 Iowa 695; *Maryland Cas. Co. v. Des Moines City Evangelical Union,* 184 Iowa 246.

IV. Does the fact that these claimants are entitled to enforce their claims against Jones personally and against his surety operate to prevent the *plaintiff* from enforcing its claim as against the school district? The school district did not, in terms, by its contract bind itself to pay these claims. Nevertheless, it had a right to contract for the benefit of such claimants, and to insist upon the performance of said condition. The "contract" contained the following proviso:

"Payment to be made as the progress of the work may justify, less 15 per cent which will be retained at all times *until*

*all the requirements of the plans, specifications and this con-
tract are complied with* and the work is completed and accepted.
Provided that at all times there shall be sufficient funds with-
held to complete said building without using any part of said
15 per cent.

"The final payment shall be made within 10 days after the
completion of the work included in this contract, and all pay-
ments shall be due when certificates for the same are issued."

It will be noted that, by the first of the foregoing provi-
sions, it is provided that the 15 per cent "will be retained at all
times until all the requirements, plans, specifications and this
contract are complied with." Under the second provision, it is
provided that payment shall be made within 10 days after the
completion of the work included in the "contract."

It is the contention of the appellant that, at the expiration
of ten days after the completion of the work, its right became
fully matured, and that it was entitled, as a matter of law, to
demand the balance on hand. This contention rather ignores
the first provision quoted. The right of appellant to the fund
was precisely what the right of Jones would have been, in the
absence of assignment. "All the requirements" of the contract
had not been complied with by a mere completion of the work.
The one proviso is no more imperative than the other. They are
capable of a harmonious construction together. Undoubtedly,
they involve some repetition. It is said by the appellee that the
first provision was written into the contract in typewriting,
whereas the second was a part of a printed form. It is urged,
therefore, that the typewritten portion should control the
printed portion of the contract. But the fact thus relied on as
to the condition of the contract is denied by the appellant, and
we find nothing in the record to support the claim of appellee.
We see no difficulty, however, in finding a harmonious con-
struction of both of these provisions. Each of them sets up a
bar against the contractor. Neither bar could be ignored by
him in making a demand for the balance due. He could not de-
mand payment of the balance until the work was completed, and
until 10 days thereafter. He could not demand payment until
all other requirements had been complied with. One of these
requirements was that he should pay for the labor and material.

If he had complied with all the requirements, and had completed the work, even then he could not demand final payment as of an earlier date than 10 days after the completion of the work. It is not enough, therefore, for the appellant to show that more than 10 days had elapsed after the completion of the work. If the school district had a right (as we have repeatedly held it had) to contract for the benefit of labor and materialmen, it had a right to insist upon the provisions as a condition of final payment. It has insisted upon such condition. This of itself is a continuing bar to recover this balance by Jones or by his assignee. Whether the district could have elected to pay these labor and material claims to the extent of the fund in its hands, we need not determine. There is much reason for saying that, if equity did sustain its refusal of payment until the condition be complied with, it might, as a matter of equity to Jones, require the district to pay out the money to the proper claimants, and thereby to terminate the accrual of interest, and to terminate its own possession of the fund and the benefits thereof.

Somewhat is said in argument on the question of superiority of equities. If we are correct in our conclusions thus far, we have no occasion to consider this question. The equities are appealing on both sides of the controversy. The plaintiff bank did advance to Jones large sums of money in aid of his carrying out the contract. It acted at all times in good faith, and in reliance upon its assignment. It is entitled to all the protection which the law will permit. Nevertheless, it was bound to take notice of the contract in its entirety, and it was bound to know that, under its assignment, it would stand all the time in the shoes of its assignor, and that it would be subject to all the financial vicissitudes and calamities that might attend the execution of his contract. It took a grave risk, which, though in no manner discreditable, did not and could not diminish the contractual rights either of the school district or of the labor and material claimants. Whether these claimants could have successfully maintained an action against the school district, we do not determine. Whether, against the will of the school district, these claimants could have established a legal or equitable claim to

this particular fund, we do not determine. We only hold that the school district had a right to insist upon the provision which it originally made on behalf of such claimants, and to insist upon it as a condition to final payment under its contract; and that the claimants had a right to come in and take the benefit of such election on the part of the district. In view of this conclusion, we have no occasion to consider what rights, if any, the surety company has to insist upon an application of this fund to the payment of these claimants. As a practical fact, the application ordered by the trial court operates *pro tanto* to the benefit of the surety company. There is no privity between the plaintiff and the surety company. Neither has any claim upon the other, though both of them have equities as against Jones. Upon this record, we are required to determine the rights of the labor and materialmen in and to the fund withheld for their benefit by the school district, regardless of the indirect effect of our holding upon the other litigants. The decree entered below will be accordingly—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.