GEO. HRAHA, Administrator of the Estate of GEO. HRAHA, JR. Deceased, Appellee v. MAPLE BLOCK COAL COMPANY, Appellant.

**Special findings:** CONCLUSIVENESS. Where it is conceded that there 1 was competent evidence to support a finding of the jury such finding is conclusive.

**Same.** A judgment will not be reversed on the ground that a special 2 finding had no support in the evidence, where, under the instructions of the court to which no exception was taken, such finding was not essential to the judgment.

**Evidence:** EXHIBITS: RIGHT OF JURY TO SAME. A transcript of the 3 evidence of a witness taken at a coroner's inquest is in the nature of a deposition, and where but a portion of it was used in a subsequent action for impeachment purposes refusal to permit the jury to have the same while deliberating was proper, under the statute providing that depositions shall not be taken by the jury unless the evidence is all in writing and no part has been ordered stricken out. And refusal to permit the jury to take exhibits

having none of the elements of real or demonstrative evidence
was not reversible error, in the absence of prejudice; the statute
permitting the jury to take certain papers offered in evidence not
being mandatory.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

THURSDAY, APRIL 4, 1912.

ACTION at law to recover damages for the death of
Geo. Hraha, Jr., due to a fall of slate in defendant's mine.
Trial to a jury, verdict and judgment for plaintiff in the
sum of $3.850, and defendant appeals.—*Affirmed.*

*Carr, Carr & Evans,* for appellant.

*Thos. A. Cheshire,* for appellee.

DEEMER, J.—Deceased, George Hraha, Jr., was an
employee of the defendant, engaged as a driver of cars in
defendant's coal mine. He was a member of a miners'
union, between whom and the operators there was a con-
tract prescribing their respective duties. On January 28,
1910, while taking a car into a room being mined out by
one Hawk, and when about sixty feet from the main entry
and sixty feet from the face of the  coal, a piece of slate
from the roof over the driveway fell upon plaintiff's inte-
state, killing him instantly. The drive or roadway was
about four and one-half feet wide, and props were placed on
either side about four feet apart. At the place where the
slate fell there were six props on one side and five on the
other, which were about three and one-half feet apart.
The agreement between the operators and the miners con-
tained the following provisions:

(a) In accordance with the state law, the company
shall furnish all necessary timbers and the miner shall keep

his room securely propped. (b) If a miner working in a room fails to securely prop the same, or neglects to prop as directed by the pit foreman, or carelessly shoots down the props or timbers, and a fall of slate occurs through such failure, neglect or carelessness, he shall immediately clear his roadway of such falls of slate and do all necessary re-timbering, and in case of his neglect to do so, the company may do such work and charge the expense thereof to such miner. (c) In case the room has been properly timbered as above set forth and the roof from any cause becomes so heavy as to require double timbering, the company shall, when notified by the miner, do the necessary work to protect the roadway. (d) When a fall of slate occurs between the inside props and the face of his room of an average thickness not to exceed three inches, he shall immediately remove such fall, and in case of his neglect to do so the company may do such work and charge the expense thereof to such miner. If of a greater thickness, he shall notify the mine foreman, who shall furnish the necessary labor to make such removal.

The only grounds of negligence submitted to the jury were the following: "Plaintiff states that defendant was negligent: (1) In that it failed to double timber the roadway at the place where plaintiff's decedent was killed. (2) That defendant was negligent, in that it did not exercise ordinary care to furnish plaintiff's decedent with a safe place in which to do his work, in that it failed to timber the roadway at the place where the slate fell upon plaintiff's decedent, with the knowledge or means of knowledge of the dangerous and unsafe condition of the roadway at that point."

I.    One of the questions in the case was whether or not Hawk, the miner, had notified one of defendant's employees that the roadway required double timbering or crossbars, and at defendants's request a special interrogatory was submitted to the jury upon this proposition. The jury answered this in the affirmative, and the principal question on this appeal is

1. SPECIAL FIND-
INGS: conclu-
siveness.

whether or not there was sufficient testimony to sustain the finding. Appellant's counsel frankly conceded that the witness Hawk so testified, but they say that the witness was successfully impeached, and that the overwhelming preponderence of the testimony shows that no such notification was given. In view of this concession, it is manifest that the question was for a jury.

Moreover, the instructions given did not make such a finding essential to a recovery by the plaintiff. The charge in effect was that plaintiff need only show that defendant had actual notice or knowledge of the alleged defect in time to have repaired or mended the same before the accident occurred. This instruction was not excepted to, and there was evidence other than the claimed notification from which a jury might have found such knowledge. Of course, if there was an entire want of testimony on the question of notification, an affirmative finding that such notice was given would probably indicate passion or prejudice; but the record shows that there was testimony of such notification, and its weight was for a jury.

2. SAME.

II. Within a few days after the accident occurred, defendant's counsel secured an affidavit from Hawk, in which he stated, or purported to state, how the accident occurred. The affidavit was offered and read by defendant for impeaching purposes. It also appears that a coroner's inquest was held upon the body of the deceased, and that Hawk was a witness before the coroner's jury. His testimony was taken down in shorthand, and afterward duly transcribed. Certain parts of the testimony as shown by this translation were also used in evidence for the purpose of impeaching Hawk, and the entire translation was offered and read in evidence by defendant's counsel. The agreement between the union and the operators was also read in evidence. When the jury was about to retire, defendant requested that

3. EVIDENCE:
   exhibits:
   right of jury
   to same.

each and all of these exhibits and documents be given to the jury to be taken to the jury room. The trial court made the following order upon this request: "The objection will be sustained except as to the little book in question, and the court has treated that book of rules as a contract between this union and the coal company, and I think, if it is to be held as a contract between these parties, then if it is introduced as an exhibit, well to be on the safe side, I will sustain the whole objection. Now it may be, if the jury shall call for anything of this kind, I might call up you gentlemen and let them have this little book." This ruling is claimed to be erroneous. Section 3717 of the Code provides: "Upon retiring for deliberation, the jury may take with them all books of accounts and all papers which have been received as evidence in the cause, except depositions, which shall not be taken unless all the testimony is in writing and none of the same has been ordered to be struck out."

As observed in *State v. Young,* 134 Iowa, 505, this statute is not mandatory, and it will be noticed that depositions are not to be sent unless all the testimony is in writing. We are constrained to hold that the translation of the shorthand notes of the testimony taken before the coroner's jury is so much in the nature of a deposition that it should not have gone to the jury. Moreover, but a small portion of it was used for impeaching purposes, and the trial court was justified in refusing to send it all. There was no question whatever regarding the rules which existed between the miners and the operators, and no prejudice resulted from refusing to send them to the jury. While the affidavit made by the witness might well have been sent, yet no prejudice resulted from denying the request. This exact point is ruled by *McMahon v. Iowa Ice Co.,* 137 Iowa, 368. None of the items may properly be classed as real or demonstrative evidence as in *State v. Young, supra.* There the exhibits were a species of real testimony, the very thing

itself, and as such they manifestly should have gone to the jury, for the opinions of experts upon the matter were not binding upon them. The jurors had the right to determine from an inspection of the documents themselves whether they answered the requirements of the statute, and it was held that they should have gone to the jury as demonstrative testimony. None of the exhibits here offered had any such characteristics. As to one there was no dispute, and, as to the others, there was no suggestion that any change had been made therein and no conflict regarding what they contained. As said in the *McMahon* case *supra*: "Considering the exhibit in question, and conceding the same to be such a written document as to bring it within the meaning of the statutory provision to which we have made reference, we think that in reason no prejudice could have resulted from the simple failure to send it out on request of plaintiff. It will be remembered that Burham testified on his direct examination that he had taken two drinks of intoxicating liquor early in the day. At best, the exhibit—his written statement executed at some time prior to the trial—amounted to no more than an admission on cross-examination that, in addition to the morning drinks, he had drank more or less during the forenoon. The jury had the fact before them, and it can not be assumed that it was overlooked in their consideration of the case."

No prejudicial error appears, and, as the instructions are not criticised and the verdict has support in the testimony, we should not interfere.

The judgment will therefore be, and it is, *affirmed*.