JOHN H. PARNHAM, Appellee, v. F. R. WEEKS, Administrator, et al., Appellants.

**EXECUTORS AND ADMINISTRATORS:** Allowance of Claims—
1 Care of Parent—Mutual Expectation to Pay and Receive Compensation. Evidence reviewed, and held to sustain a finding by the jury that services by a son in caring for an aged parent were performed with the mutual expectation on the part of the parent of paying for such services, and on the part of the son of receiving such payment.

**EVIDENCE:** Relevancy, Materiality and Competency—Excluding
2 Immaterial Part of Exhibit. Principle recognized that it is proper for the court to exclude an offered exhibit in so far as it does not bear on the matters in issue.

**EVIDENCE:** Opinion Evidence—Nonexpert Opinion as to Mental
3 Competency—Improper Basis. Nonexpert opinions as to the mental competency of a person not based on the matters detailed by the witness, are inadmissible.

**TRIAL:** Deliberations of Jury—Possession of Exhibits. Exhibits
4 need not be sent to the jury room, in the absence of a request for such action, especially where the court, upon admitting them in evidence, stated that they would not be sent out with the jury, and counsel, by silence, acquiesced. Sec. 3717, Code, 1897.

**COSTS:** Taxation—Voluntary Defendant. Heirs voluntarily ap-
5 pearing on the trial of a claim in probate, and asking and being

granted the right to defend in place of the administrator (who had formerly allowed the claim), must suffer a judgment for costs in case of allowance of the claim.

*Appeal from Audubon District Court.*—E. B. WOODRUFF, Judge.

MONDAY, JUNE 25, 1917.

APPEAL from judgment in favor of a claimant against an estate. Defense by permission of court in name of administrator by the heirs. The facts are stated in the opinion.—*Affirmed in part; reversed in part.*

*Mantz & White,* for appellants.

*J. M. Graham, S. C. Kerberg* and *T. M. Rasmussen,* for appellee.

STEVENS, J.—In July, 1909, Millicent

1. EXECUTORS AND ADMINISTRA-TORS: allowance of claims: care of parent: mutual expectation to pay and receive compensation.

Parnham died testate, seized in fee of 220 acres of land, a house and lot in the town of Audubon, and some money. Her husband, George Parnham, survived her. To him she bequeathed, in lieu of dower, the life use of the 220 acres of land. Her will further provided that, in the event he should refuse to consent to this provision of her will, then her real estate was bequeathed, one half to John Parnham, appellee herein, and the rest to Charles Robert Parnham for life, remainder to his children. Shortly after the death of Millicent Parnham, John Parnham qualified as executor of her estate. On July 4, 1911, George Parnham died intestate, without property. Shortly thereafter, upon the application of John Parnham, F. R. Weeks was appointed administrator of his estate. In March, 1909, George and Millicent Parnham went to live with John Parnham upon the 220-acre tract, which was situated in Audubon County. They continued to reside at his home until their death. John

Parnham filed a claim against the estate of George Parn-ham, deceased, in the sum of $2,550, claiming that said amount was due him for care, nursing, board and support of his father during the time he resided with him after March, 1909. The administrator allowed the claim as a claim of the third class. On December 30, 1913, upon application of appellants, except F. R. Weeks, the allowance of said claim by the administrator was set aside by the court, and the same set down for hearing on its merits. The court, at the same time, granted to the heirs of George Parnham permission to defend against said claim in the name of the administrator. Appellee stated his cause of action in two counts: (a) Upon a contract, by the terms of which deceased promised and agreed to pay appellee for his board, care and nursing, while he lived in the home of appellee; (b) for the reasonable value of the board, care, nursing and other services rendered to the said George Parnham. Shortly after George and Millicent Parnham went to live at the home of claimant, there appears to have been a conversation one morning at the breakfast table between John Parnham and his mother, in which the matter of compensation for their board and care was discussed. The record is not clear as to exactly what was said, but enough is given so that the inference may be drawn that all of the parties understood that John Parnham would be paid for the services to be rendered to both the father and the mother. The father, apparently, took little, if any, part in the conversation, but was present, and, so far as the record discloses, heard all that was said between the parties. George Parnham was past 80 years of age, very feeble and infirm, and, the evidence tended to show, required much care and attention upon the part of claimant and his family. No testimony was offered on behalf of appellants for the purpose of disputing either the extent or value of the services rendered by John Parnham and family,

but appellants base their defense upon the following grounds: (a) That George Parnham was mentally incompetent to make the contract alleged by claimant for board, care, nursing and other services; (b) that the services were rendered gratuitously, and without the intention of charging therefor, and without the expectation that any compensation would be made to him; (c) that appellee had been fully paid for all services rendered prior to the time claim in suit was filed. The jury returned a verdict in favor of claimant for the full amount of his claim. Judgment was rendered in accordance with the verdict. Both parties appeal, the appeal of the administrator being from the judgment against him for costs. The defendants will be treated as appellants herein.

I. Appellants offered in evidence the

2. EVIDENCE: relevancy, materiality and competency: excluding immaterial part of exhibit.

first and second annual reports of John Parnham as executor of his mother's estate, but only a portion of said reports was admitted by the court. In the first annual report, which was filed prior to the death of his father, appellee, among other matters, stated that:

"In addition to said personal property, said decedent owned certain real estate in said county, a life estate in which was devised by the will in said estate to the husband of said decedent, George Parnham; * * * that said George Parnham requires constant care, and it has been necessary for this executor to provide a home for him and otherwise care for him; that he is entitled to pay for said services; that he believes the same to be reasonably worth the sum of $.50 per day."

In the second annual report, he said:

"He (John Parnham) shows to the court that George Parnham, holder of a life estate in the real estate belonging to said estate, died on or about July 4, 1911; that he

has paid all the bills for care and maintenance of said George Parnham up to the time of his death."

The above extracts from the two reports, together with Exhibit C attached to the first annual report, which purported to be a "statement of moneys paid out for care of George Parnham, and for expense in keeping up and repairing property of the estate," together with other portions of the second annual report, were admitted by the court.

The record is not quite clear as to exactly what part of the second annual report was received. The court, upon objection by appellee, excluded all that part of each of said reports that did not in some way refer to the expenditure of funds by appellee in payment of the care, nursing and board of George Parnham, or of repairs upon the farm. Appellant insists that the court committed error in refusing to permit the whole of said reports to be received in evidence. Appellee, called as a witness in his own behalf, was permitted to detail at some length the services claimed to have been rendered by himself and family to George Parnham, and, upon cross-examination, was interrogated fully in regard to all of the matters gone over in chief. He testified to the income derived from the real estate belonging to the estate of his mother, and to the payment of certain items therein referred to for the use and benefit of his father. He denied that he had been paid for his services, or that the same were rendered gratuitously and without the intention to charge therefor, and stated that he fully expected to be compensated for the services rendered.

The only purpose for which these reports were offered in evidence was to show that appellee had made statements, admissions and declarations inconsistent with the claim he was then making against the estate of his father, and that the same tended to show that whatever services

were rendered by himself and family to George Parnham
were rendered without the intention to either charge or
receive compensation therefor. Every statement and item
contained in said reports tending, even remotely, to estab-
lish the claims asserted by appellants, were admitted in
evidence. In fact, it is practically conceded by appellants
that the court admitted all that was contained in said re-
ports tending in any way to directly discredit the claim of
appellee that he intended to charge for the services ren-
dered, or that he had not previously been paid therefor;
but contend that the said reports, taken as a whole, would
have justified the jury in inferring that appellee had at no
time prior to the death of his father intended to claim any-
thing for the services rendered to him; that is, notwith-
standing that the portions of the two reports excluded by
the court contained no reference to the matter of compen-
sation or services rendered, yet, when taken in connection
with the parts admitted, they were more persuasive and
convincing than the extracts admitted, standing alone.

As before stated, George Parnham died without hav-
ing elected to consent to the provisions of his wife's will,
and therefore the claim is made that he died seized of an
undivided one third of the real estate belonging to her at
the time of her death. Except the interest which he had
in her estate, he possessed no property of any kind.

In the absence of evidence to the contrary, it must be
presumed that George Parnham knew and understood the
interest which he had as her surviving spouse in the real
estate of his deceased wife. The evidence is undisputed
that, in a conversation had at the breakfast table in the
home of John Parnham, Millicent Parnham, in the pres-
ence of her husband, instructed appellee to keep an ac-
count of what he did for them, as he was to be paid there-
for. One witness, who was present at the time this con-
versation was had, testified that George Parnham took part

in it.   Nothing that was said by him, however, appears in the record.   The evidence relied upon by appellee to establish his claim that the services rendered were in obedience to a contract made upon the occasion of the conversation at the breakfast table may not be wholly convincing, but whether convincing or not upon this question, it does lend aid and support to appellee's claim that the services were rendered on his part and on the part of both Millicent and George Parnham with the intention that same were to be paid for.

The court very carefully guarded the interests of appellants in its instructions to the jury, and placed the burden upon appellee to overcome all of the presumptions of law that arose from the fact that the services were rendered by the son to his parents, and required him to show that the services were rendered with the understanding, both on his part and that of his father, that same were to be paid for.

The evidence, taken as a whole, may justify the inference that appellee believed that the interest of his father in the estate of his deceased mother was that of the life use only of the 220-acre farm, but this inference does not necessarily lead to the conclusion that he intended to render the services in question without compensation therefor.   Appellants offered no evidence in contradiction of the claim of appellee that valuable services were rendered by him and his family to George Parnham.   So far as the record is concerned, appellants, in effect, concede that both the rendition of services and the value thereof fixed by claimant were just and reasonable.

After the death of George Parnham, apparently, appellee learned for the first time that his father died seized in fee of an undivided one-third interest in the real estate of his mother.   He then caused an administrator to be appointed and the claim in controversy to be filed.   The

inference may be drawn from this fact that, at the time the services were being rendered, appellee believed that the only source from which he could be paid for his services was the income and profits derived from the 220-acre farm, which was not substantial; but this inference does not justify the conclusion that the services were being rendered gratuitously. The mere fact, if assumed, that he believed that the source of income was insufficient to substantially compensate him for the services rendered, would not outweigh other testimony to the effect that he had not only expected to be paid, but that payment had, in fact, been promised him.

The evidence is clear that George Parnham, before his death, became very feeble and required constant care, nursing and attention; that appellee and his family were faithful and constant in their attentions to the old gentleman; and that the services rendered were of a character that justified the jury in finding that appellee was entitled to substantial compensation therefor.

The court gave due prominence in its instructions to the consideration to be given by the jury to the extracts from the first and second annual reports of appellee, as executor of his mother's estate. The purpose for which the same were admitted and the weight to be given to them by the jury were clearly and fully stated. While the portions of the reports admitted tended to some extent to justify the claim of appellants that appellee had charged and received pay for his services, yet the same were not conclusive. The question was for the jury. The evidence failed to satisfactorily show that appellee had been paid for the services rendered. An item of $101.50 referred to in the first report, the evidence showed was not received by appellee or a member of his family, but the same was paid to a servant hired to do the housework, while appellee and his family devoted their time and attention to the care

and nursing of George Parnham. The question as to whether the services were rendered gratuitously or with the intention and expectation that same would be paid for, and whether appellee had in fact been paid therefor, was for the jury. The court, under proper instructions, submitted the same to the jury. The court admitted in evidence all that was contained in the two annual reports that bore upon the questions at issue, and properly excluded the rest.

II. The court sustained a motion made by counsel for appellee to strike the opinion of a nonexpert witness, called by appellants to give testimony regarding the mental incompetency of George Parnham at the time of the conversation at the breakfast table, when it is claimed that the contract alleged in Count 1 of plaintiff's claim was made. The court sustained the motion, upon the ground that the witness did not base his opinion wholly upon matters testified to by him. We do not deem it necessary to set out the record on this point, but we think it apparent that the witness based his opinion upon matters not covered by his testimony. The rules governing the admission of the evidence of nonexpert witnesses are too familiar to require statement or the citation of authority. The motion to strike was properly sustained.

III. The court withdrew from the jury the question of the mental unsoundness of George Parnham. The evidence introduced did not justify the submission of this question to the jury. The opinion of one witness was properly stricken by the court, and the other witness, upon cross-examination, made it apparent that he had no knowledge of the mental condition of George Parnham at or about the time the alleged contract was entered into.

What is said on this point disposes of appellants claim that the court committed error in refusing to submit

to the jury the special interrogatory requested by their counsel as to the mental condition of George Parnham at the time it is claimed the alleged contract was made.

IV. It is also claimed by appellant

4. TRIAL: deliberations of jury: possession of exhibits.

that the court committed error in refusing to permit the reports offered in evidence, only portions of which were admitted, to be taken by the jury while deliberating upon its verdict.

Our statute (Code Section 3717) provides:

"Upon retiring for deliberation, the jury may take with them all books of accounts and all papers which may have been received as evidence in the cause, except depositions, which shall not be taken unless all the testimony is in writing and none of the same has been ordered to be struck out."

The court, in State v. Young, 134 Iowa 505, held that the language of this statute is not mandatory, and therefore the court, in the absence of a request, does not err in omitting to send the papers out with the jury; but that, when requested by either party, the papers and books received in evidence should be sent out with the jury, and refusal to do so is error.

The record as to what occurred with reference to these exhibits is that, when the same were offered in evidence, the count announced that only a portion of each would be received, and that the jury would not be permitted to take the same upon retiring to deliberate upon the case, but that counsel might use the same in argument to the jury. Counsel for appellant at the time made no objection to the observation of the court, nor did counsel request the court to permit the exhibits to be sent to the jury room. The record, therefore, presents no question for the consideration of this court. Had counsel requested that the exhibits be taken by the jury, and, upon the refusal of the court to permit the same to be taken, proper exceptions

had been preserved, the question might have been considered upon this appeal. It may be proper, however, to state that, while counsel claims that Exhibit C, attached to the first annual report of the executor .of the estate of Millicent Parnham, was written upon a different kind of paper than the rest of the report, and that same bore evidence upon its face of alteration or mutilation, there is no apparent reason why the attention of the jury was not called to the matters referred to, and each member of the panel permitted to inspect the same. Furthermore, Exhibit C comprised but a single sheet of the report, and all of the entries thereon were admitted in evidence. It could have been readily detached from the rest of the report, and doubtless, upon request, the court would have permitted same to be done, and the paper taken by the jury upon retiring to its room for deliberation.

V. The heirs at law of George Parnham were permitted to appear and defend in the name of the administrator. They in fact entered their appearance and filed answer as parties to the suit. The claim in controversy had previously been allowed by the administrator. The jury found in favor of the claimant for the full amount of his claim. There would seem to be no reason why the parties who voluntarily entered their appearance for the purpose of making defense should not be liable to the payment of the costs of the proceedings. The court below taxed the costs against the administrator. Plaintiff filed a motion to retax the costs, and prayed that same be taxed to the defendants, except the administrator. The motion was overruled; plaintiff appeals.

5. COSTS: taxation: voluntary defendant.

The result of the trial justified the allowance of the claim by the administrator, and we see no reason why the estate should be taxed with any part of the costs herein. The motion to retax the costs should have been sustained

and judgment entered therefor against the defendants, except the administrator.

The cause is, therefore, affirmed · upon defendants' appeal and reversed upon plaintiff's appeal, with directions that the costs be taxed to the defendants, except the administrator.

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.