WILLIAM KLEIN, appellant, v. SWIFT & COMPANY and CARL F. FARWELL, appellees.

No. 49027.

(Reported in 81 N.W.2d 469)

March 5, 1957.

Edgar L. King, of Cedar Rapids, for appellant.

John D. Randall, of Cedar Rapids, for appellees.

THOMPSON, J.—Plaintiff's suit was for damage to his automobile and personal injuries sustained in a collision with a truck owned by the defendant Swift & Company and driven by its employee, the defendant Farwell. Upon trial, the jury returned a verdict for the plaintiff against both defendants in the

sum of $8595.45. Thereafter the trial court granted the defendants' motion for new trial, and we have this appeal by the plaintiff.

The grounds of the motion which were sustained were four in number: 7, that the verdict was excessive and the result of passion and prejudice; 9, that the verdict was a quotient verdict; 12, that the jury failed to comprehend and understand the evidence and it was not just and correct; and 14, that in the interests of justice and in the exercise of its discretion the court should grant a new trial. We find it necessary to discuss only the first two grounds, 7 and 9, which were sustained.

I. We shall first consider Ground 9 of the motion, which raised the question of a quotient verdict. Attached to the motion for new trial was the affidavit of Ronald E. Ellis, one of the jurors who tried the case. It appears from this affidavit that the jurors were in disagreement as to the amount to be allowed for pain and suffering. Liability of the defendant and the amount to be allowed for the plaintiff's actual expenses had previously been determined. As a means of deciding the disputed amount for pain and suffering one of the jurors suggested that each should write on a piece of paper his or her figure as to the amount to be allowed and then the sums so stated should be added and the total divided by twelve. We quote the affidavit thereafter:

"When the juror made this suggestions (sic) as to a method of arriving at the amount of the verdict for pain and suffering and therefore, at the eventual amount of the total verdict, every one of the jurors agreed that this should be the method of arriving at the figure as to the amount of pain and suffering and that the verdict of the jury should be the actual expenses which had been previously agreed to plus a figure which would be the total of all of the figures written down by each of the jurors as a figure for pain and suffering divided by twelve and this figure added to the figure of the total expenses and that this figure would be the figure which would be returned into Court as the verdict of the jury.

"That after this suggestion was made, each of us placed a figure on a slip of paper and these slips of paper were totaled

and the total amount was divided by twelve. The figure which was obtained in this manner was $5900 and some odd dollars, I have forgotten the amount but after arriving at this figure, one of the jurors moved that the amount for pain and suffering be made an even $6000. The difference was a very slight one and thus the verdict which we eventually arrived at was the total of various figures added to the figure for the actual expenses and this was the amount that was ultimately turned into the Court as the verdict of the jury on December 17, 1954."

Several other jurors, by affidavit and by testimony on oral examination at a hearing before the court upon the motion for new trial, agreed that each juror's idea as to the amount for pain and suffering had been written, the sum of all added and the amount divided by twelve as related in Ellis' affidavit. Most of them also agreed that the average so reached was between $5900 and $6000, and all said that the amount finally allowed for pain and suffering was $6000. But the others denied that there had been any agreement in advance of writing down, totaling and averaging the sums that the sum so found would be accepted as the amount to be allowed. The trial court accepted Ellis' version, saying:

"There was considerable argument and nobody was getting anywhere and thereupon someone said: 'Why don't we—everybody put down what they think for pain and suffering and divide it by twelve and put that figure in, and they said, All right, let's do that.' Something along that line, I think, is probably what happened."

The court then pointed out the common instruction given to juries on the preponderance of the evidence, which says that it is not alone determined by the number of witnesses, but by the greater weight of the testimony. Following this rule, the court said the impact left by the affidavits and oral testimony of the jurors who were called was that the greater weight was with the state of facts set up in the Ellis affidavit. So finding, the court held there was a quotient verdict which could not be allowed to stand.

The court's finding of fact at this point, if supported by any substantial evidence, is binding upon us. We are not permitted to weigh the evidence or to hold that its weight is

contra to that found by the trial court. We have often so held. State v. Rutledge, 243 Iowa 179, 200, 47 N.W.2d 251; State v. Ebelsheiser, 242 Iowa 49, 60, 43 N.W.2d 706, 19 A. L. R.2d 865; State v. Davis, 230 Iowa 309, 313, 297 N.W. 274; State v. Kurtz, 208 Iowa 849, 851, 225 N.W. 847; Thornton v. Boggs, 213 Iowa 849, 850, 851, 239 N.W. 514.

II.   We turn then to the somewhat more difficult question of whether there was in fact any substantial evidence of a quotient verdict to support the finding of the court. In 53 Am. Jur., Trial, section 1030, page 710, we find this statement which includes a definition of a quotient verdict: "It is well settled that a verdict rendered in a civil action in pursuance of an agreement by the jurors to accept one twelfth of the aggregate amount of their several estimates of the measure of damages, without the assent of their judgment to such a sum as their verdict, is invalid * * *."

It will be noted that the fact situation as presented by the Ellis affidavit was that there was an agreement in advance to be bound by the average of all the sums set down by the jurors. This was the version accepted by the trial court.

▆▆   The plaintiff-appellant cites at this point Bailey v. Fredericksburg Produce Assn., 229 Iowa 677, 686, 295 N.W. 122; Owen v. Christensen, 106 Iowa 394, 401, 76 N.W. 1003; Sullens v. Chicago, Rock Island & Pacific Ry. Co., 74 Iowa 659, 666, 38 N.W. 545, 7 Am. St. Rep. 501, and other cases. But in each of these there was no agreement in advance that the result obtained would be binding, or would be the figure inserted in the verdict. It is not the setting down of the amounts thought proper by each individual juror that is objectionable, but the advance agreement to be bound by the average, and the adherence to this agreement after the quotient is obtained. The two elements must combine to make an illegal quotient verdict. Nicholson v. City of Des Moines, 246 Iowa 318, 331, 332, 67 N.W.2d 533.

The plaintiff further urges that "if the greater number of jurors stated there was no illegal quotient verdict, then the trial court should be bound thereby * * *." Clary v. Blondel, 178 Iowa 101, 103, 159 N.W. 604, and Sylvester v. Incorporated Town of Casey, 110 Iowa 256, 262, 81 N.W. 455, are cited. The Clary case holds only that the trial court was within its proper

province in deciding, in a case of conflicting affidavits, that there was no quotient verdict. This court said: "However, the issue was for the trial court to decide, and evidently it concluded that the affiants last mentioned were the more credible." The point in Sylvester v. Incorporated Town of Casey was that it is not necessary that all of the jurors agree to abide by the result of the "adding and dividing" process. We said: "It is enough to vitiate the verdict if the greater number so agreed, and that is shown here without dispute."

█ We could not uphold the plaintiff's contention that the trial court must be governed by the greater number of jurors denying the quotient verdict without overruling our cases cited in Division I above. This we are not inclined to do.

█ It is also urged by the plaintiff that subsequent ratification removes the taint of illegality. But this must be definitely shown. It must appear that there was something more after the original agreement to be bound and the computation of the average than a mere new assent to the sum reached. We quote from Thompson v. Perkins, 26 Iowa 486, 487:

"That it is competent for a jury, having determined their verdict by lot or otherwise illegally, to retrace their steps, repudiate such illegal conduct and verdict, and find a valid one upon due and candid deliberation, we have no doubt. But having found such illegal verdict, the evidence of its repudiation and the subsequent proper finding of a sufficient verdict should be very clear and satisfactory."

In Sylvester v. Incorporated Town of Casey, supra, at page 262 of 110 Iowa, page 457 of 81 N.W., is this language: *"While such an illegal verdict may be repudiated, and a valid one found as the result of due deliberation, a subsequent assent to it is not alone sufficient to purge it of illegality."* (Italics supplied.)

A case much in point is Carter v. Marshall Oil Co., 185 Iowa 416, 424, 170 N.W. 798, 800. Here, after an agreement to set down, total and divide and to accept the sum so reached as the verdict, and this quotient was determined, a following vote was taken as to whether that should be the verdict, and it was so agreed, with a small amount of interest added. The situation as made by the Ellis affidavit in the instant case, which

the trial court accepted, is identical. After the average figure had been computed at $5900 "and some odd dollars * * * one of the jurors moved that the amount for pain and suffering be made an even $6000. The difference was a very slight one * * *." In the Carter case we held:

"The affidavit of all the jurors was that, after the average amount had been ascertained, it ($8,666.66) was discussed, and a vote taken as to whether that amount should be the amount of the verdict. *This was no more than a ratification of what had preceded, and the average amount stood on another vote to add interest. The illegal conduct in reaching the amount of the verdict to be returned was not repudiated or abandoned, but rather confirmed, by what followed. The evil of a quotient verdict cannot be cured by agreeing thereafter to a slightly different verdict, if it appears that the agreement made in advance entered into or induced the result; nor can a quotient verdict be cured by the jury's subsequently adopting it or its equivalent as their verdict, if the agreement entered into or controlled the subsequent adoption of the verdict returned.*" (Italics added.)

See also Thornton v. Boggs, supra, 213 Iowa 849, 851, 239 N.W. 514.

As we read the Ellis affidavit, the agreed upon quotient verdict was adopted by the jury, with the addition of a slight amount to make an even figure. If what this juror said is true, as the trial court found, the final verdict was induced by the advance agreement. We find no error in the grant of a new trial because the jury returned an illegal quotient verdict.

■ III. Our conclusion that the court properly sustained the motion for new trial because of its finding that there was a quotient verdict requires an affirmance of the case. If any ground of the motion was well founded, the grant of a new trial was required. Consideration of the other grounds which the court upheld is not necessary, unless the same question might reasonably be expected to arise upon another trial. We think the only matter involved in the other grounds likely to appear upon another trial is the question of the amount of the verdict.

The trial court thought this excessive, and so granted the motion upon this ground as well as the others we have set out. The evidence upon this point may of course be different upon another trial; but since the field of damage seems to have been fairly well covered it mày be substantially the same. The question is as to the allowance for pain and suffering. Under the facts, we are of the opinion this ground of the motion should have been denied.

■ Perhaps the trial court was somewhat influenced in its thinking at this point by the manner in which the amount was reached. It is true the verdict was a quotient one, as the court saw it; and so was not the result of a well-considered finding by the jury as to what the damage for pain and suffering actually was. However, there was evidence that as a result of the collision the plaintiff underwent two operations, the first resulting in the removal of his spleen which had been ruptured, the second to remedy a hernia which was the outgrowth of the first surgery. He testified to severe pain at the time of the accident, to numerous cuts and abrasions, to pain and discomfort following the first operation until the time of the second one, a matter of about eleven months, and to considerable discomfort up to the time of the trial, which was about sixteen months after the collision. Without further detail, and likewise without expressing any opinion as to what the allowance, if any, should be, we think that the sum of $6000 for pain and suffering in and of itself was not so excessive under the facts here that a new trial should have been granted on that ground alone.

Other matters discussed in the briefs are not likely to arise upon another trial.—Affirmed.

All JUSTICES concur.