WILLIAM MONGAR, by his next friend, ELIAS MONGAR, appellee, v.
FRANK BARNARD, appellant.

No. 49060.

(Reported in 82 N.W.2d 765)

MAY 7, 1957.

 ┤ 

Killmar & Reynoldson, of Osceola, for appellant.

Slaymaker & Wassom, of Osceola, for appellee.

GARFIELD, J.—This is a law action to recover for personal injuries sustained in a motor-vehicle accident at an intersection in the country in daylight on January 30, 1953. There was a jury verdict and judgment for plaintiff for $10,000 which defendant has appealed. For convenience we disregard the fact the action was brought by the next friend of the injured boy who was 19 at the time.

Defendant, Barnard, a substitute rural mail carrier, was driving his 1950 Chevrolet car north on paved U. S. Highway 69 north of Osceola. He intended to turn left (west) at the Casey corner onto an east-and-west intersecting road. Plaintiff, Mongar, driving his father's 1952 Ford truck loaded with eight tons of crushed rock, was following defendant on 69. Two cars were coming from the north on the same highway toward the intersection. The forward car, driven by Lowe, was so close defendant decided to stop until it cleared the intersection before he made his left turn. Plaintiff was unable to stop his truck and turned out to pass the Chevrolet on the right (east). In getting back onto the pavement plaintiff was "knocked out" or "passed

out", the truck went out of control, upset and plaintiff was seriously injured.

The case involves the rights and duties of a motorist about to make a left turn who stops his car before doing so and the rights and duties of another motorist who is following him. The principal duty plaintiff claims defendant failed to discharge is the giving of a proper signal.

The trial court submitted to the jury two charges of negligence against defendant: (1) In stopping his car suddenly in the path of plaintiff's truck without giving a proper signal of his intention to do so, and (2) In failing to keep a proper lookout.

I. Defendant first assigns error in the overruling of his motion to direct verdict based on claimed insufficient evidence of defendant's negligence and plaintiff's freedom from contributory negligence. In considering this claim of course the testimony will be viewed in the light most favorable to plaintiff. Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, 44, and citations. When this is done, although the evidence of defendant's negligence and plaintiff's freedom from contributory negligence may not be strong, we think it sufficient for submission to the jury.

Plaintiff testifies he was traveling around 45 miles per hour about 100 to 150 feet behind defendant. When the latter came to the Casey intersection "he just up and stopped" without giving any signals of any kind. Plaintiff says he was doing nothing that would distract his attention from the Chevrolet, he saw he could not stop, two cars were coming south in the west lane, he had to go on to the right (east) side of defendant, the road was rough, he was "knocked out" or "passed out" but tried to pull back onto the pavement. Plaintiff denies he intended to pass defendant's car before it stopped.

Defendant gives quite a different version. He testifies he knew plaintiff was following him but says it was at a distance of 400 to 500 feet when defendant turned on his left-turn light signal and started to slow down about 300 feet south of the intersection. He also says he put his brake on and off alternately to flash his taillight, he could see the southbound Lowe car would reach the intersection about the same time he would, so he

brought his car to a stop from one to three seconds at the intersection and plaintiff went around him on the right. It is conceded defendant gave no hand or arm signal.

Lowe testifies he saw defendant's left-turn signal flash once as he, Lowe, approached. The Lowe car, going south, passed on the west side of defendant at about the same time plaintiff, going north, passed it on the east.

Plaintiff and his mother say that a few days after the accident defendant told them "He looked in the rear view mirror and saw the truck coming, but he thought it was farther back than it was, and he decided the cars coming from the north were getting too close, so he turned on his lights and stopped." This statement, which defendant denies, lends some support to plaintiff's testimony that defendant "just up and stopped" and to the conclusion he did not give a signal of his intention to turn left "continuously during not less than the last one hundred feet * * * before turning", as required by section 321.315, Code, 1950. The statutes that apply here are found in the 1950 Code.

There can be little doubt that if defendant stopped his car suddenly in the path of plaintiff's truck without giving a proper signal, or failed to exercise ordinary care under the circumstances in the matter of maintaining a lookout for other vehicles which might be endangered by his stopping or turning, he was negligent. These are, in effect, the two charges of negligence submitted to the jury. We think there is substantial evidence, more than a scintilla, to support them.

Code section 321.315, above referred to, provides for signals of intention to turn. Section 321.316 requires an "appropriate signal" of intention to "stop or suddenly decrease the speed of a vehicle." Although we have no statute which provides for a lookout, a motorist—especially when about to change his course or stop suddenly—has a common-law duty to exercise ordinary care under the circumstances in the matter of maintaining one. Clayton v. McIlrath, 241 Iowa 1162, 1170, 44 N.W.2d 741, 746, 27 A. L. R.2d 307; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82.

"The common-law duty to exercise ordinary care under the circumstances, irrespective of statute, rests on a motorist at all times. Statutory rules of the road are cumulative and do

not abrogate this common-law duty. They set the minimum, rather than the maximum, standard of care. Compliance with statute is not all that is required of a motorist. See [citations]." Clayton v. McIlrath, supra, at page 1168 of 241 Iowa, page 745 of 44 N.W.2d, page 313 of 27 A. L. R.2d.

The issue of plaintiff's freedom from contributory negligence was also for the jury. Plaintiff was entitled to assume, until he knew or in the exercise of ordinary care should have known otherwise, defendant would comply with the statutes and also exercise ordinary care. Worthington v. McDonald, 246 Iowa 466, 475, 68 N.W.2d 89, 94, 47 A. L. R.2d 135, 142, and citations. Further, if defendant stopped suddenly in plaintiff's path without giving a proper signal the jury might find plaintiff was thereby confronted by an emergency not of his own making, which constituted a legal excuse for his violation of any statute defendant has invoked. See Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, 554, and the numerous decisions that have followed it.

Harrington v. Fortman, 233 Iowa 92, 8 N.W.2d 713, closely resembles this case on its facts. We have cited it with approval several times. It holds there should have been submitted to the jury an issue similar to the first charge of negligence submitted here and that the question of freedom from contributory negligence was for the jury. See also, as supporting our conclusion as to contributory negligence, Leinen v. Boettger, 241 Iowa 910, 44 N.W.2d 73; Anderson v. Strack, 236 Iowa 1, 6, 17 N.W.2d 719, 721; Burbridge v. Briggs, 235 Iowa 12, 15 N.W.2d 909; Semler v. Oertwig, 234 Iowa 233, 254, 255, 12 N.W.2d 265, 276; Schroeder v. Kindschuh, 229 Iowa 590, 294 N.W. 784.

An extended annotation to Dippert v. Sohl, 74 S. D. 236, 51 N.W.2d 699, 29 A. L. R.2d 1, commencing on page 5, entitled "Sudden or unsignaled stop or slowing of motor vehicle as negligence", reviews many decisions which have some application here on the issues of negligence and freedom from contributory negligence.

What we have said also disposes of defendant's claim of error in not withdrawing from the jury, for alleged insufficient evidence to support them, the two grounds of negligence which were submitted.

■ II. Defendant offered in evidence exhibit 1, a written statement plaintiff gave two weeks after the accident to a lawyer or adjuster from the insurance company that carried collision insurance on his father's truck and also the liability insurance on defendant's car. The statement contains some matters at variance with some of plaintiff's testimony. The trial court first withheld ruling on plaintiff's objection to the offer of the statement and later sustained the objection. However, the exhibit was received in evidence when defendant reoffered it at the close of the evidence.

■ We think the original exclusion of this exhibit and delay in admitting it were not sufficiently prejudicial to defendant to warrant reversal. Soon after it was produced defendant questioned plaintiff regarding parts of the exhibit that vary from his testimony. It was received before arguments to the jury and was before it during its deliberations. Generally error in the exclusion of evidence is rendered harmless or is cured by its subsequent admission. See Jaeger v. Hackert, 241 Iowa 379, 392, 41 N.W.2d 42, 49, 50; Korf v. Fleming, 239 Iowa 501, 513, 32 N.W.2d 85, 92, 3 A. L. R.2d 270; Hatfield v. Iowa State Trav. Men's Assn., 180 Iowa 39, 44, 45, 161 N.W. 123; Doran v. Waterloo, C. F. & Nor. Ry. Co., 170 Iowa 614, 633, 153 N.W. 225; 5 C. J. S., Appeal and Error, section 1753.

■ III. Defendant charges misconduct of plaintiff's attorney for injecting into the case the fact defendant was protected by liability insurance. When plaintiff was being questioned about exhibit 1, referred to in Division II, he said in response to a question by his counsel the man who took it claimed to represent the company that carried the collision insurance *on plaintiff's truck*. Defendant made no objection to, or motion to strike, this answer or other complaint regarding it. We do not see that it could have been prejudicial to defendant.

■ During the final argument to the jury plaintiff's counsel said defendant would never have to pay any judgment in the case and the jury need not worry about his having to do so. No record was then made of this statement or other portions of any of the arguments. Defendant filed a bill of exceptions more than thirty days after the trial which set out for the first time

this statement, the fact defendant objected to it as improper and that the trial court said, "Well go ahead and just talk about the case."

By a second exception in the same bill defendant showed that plaintiff's counsel in argument criticized the company that carried the collision insurance on plaintiff's truck for furnishing to defendant the written statement referred to in Division II. However, defendant made no objection to this portion of the argument and it is not apparent the jury could have understood from it defendant was protected by liability insurance or that it could have been prejudicial to defendant.

The statement defendant would never have to pay any judgment in the case was highly improper and should not have been made except for the fact the trial court found, in overruling defendant's motion for new trial, it was in answer to argument for defendant. And defendant does not challenge the finding.

This phase of the case is strikingly similar to Agans v. General Mills, Inc., 242 Iowa 978, 983–985, 48 N.W.2d 242, 245, 246, where plaintiff's counsel in that case—defendant's counsel here—made substantially the same jury argument with the added generous assurance that if defendant should be forced to pay one cent of any judgment " 'I will personally reimburse him for it.' " In the cited case the trial court denied a new trial in part because the record did not show the objectionable argument was not fairly responsive to argument for defendant. Here, as stated, there is an affirmative finding on this point.

This from our Agans opinion is applicable here: "When (or if) counsel on either side oversteps the bounds of proper argument, prompt steps should be taken by the other to make the event of record when the matter is fresh in everyone's mind, and the trial court given opportunity to take whatever proper steps are possible to repair the damage without necessitating a trial anew. [Citation] * * *

"Counsel for defendants were apparently not disturbed by the argument when made. They might have moved promptly for a mistrial then or at the close of the argument. They elected to await the jury's decision, if indeed they thought any serious error had been committed. Like the trial court we are powerless now to grant them relief, * * *."

See also in support of our conclusion defendant is not entitled to a reversal on the ground of his belated claim of misconduct in argument State v. Case, 247 Iowa 1019, 1029, 75 N.W.2d 233, 240; Connelly v. Nolte, 237 Iowa 114, 124–128, 21 N.W.2d 311, 316–318.

IV. Misconduct of the jury during its deliberations is claimed in two respects. At least one juror took to the jury room a ten-page pamphlet published by the state bar association entitled "You're on the Jury." One of these pamphlets was evidently furnished each juror on the panel, perhaps by the local bar. Principal complaint against its use here is that a juror read aloud from the pamphlet, which we have before us, "Matters offered to be proved but not admitted by the court are not evidence." Three jurors made affidavit, attached to the motion for new trial, that because of this some jurors did not give consideration to exhibit 1 which the trial court first excluded. Three other jurors made affidavit controverting those first mentioned. These others say there was little comment about the pamphlet and the jurors recognized exhibit 1 as evidence.

The trial court found there was no doubt exhibit 1 was considered by the jury, as the controverting affidavits show. Since there is substantial support for this finding it is binding upon us. Klein v. Swift & Co., 248 Iowa 563, 566, 81 N.W.2d 469, 471, 472, and citations. In view of this finding we are not justified in reversing the judgment on this claim of misconduct.

■ "In order to justify a new trial on the basis of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable did, influence the verdict." Krieg v. Grant, 248 Iowa 396, 405, 80 N.W.2d 724, 729. See also Fagen Elevator v. Pfiester, 244 Iowa 633, 641, 56 N.W.2d 577, 581, and citations.

■ Although this pamphlet should not have been used in the jury room we find nothing in it calculated to influence the verdict for or against either side. Much of it consists of wholesome advice such as not to be late for court sessions. The statement defendant complains of does not greatly differ from what is implied by the court's instructions that the jury should be governed solely by the evidence produced and submitted to it.

At least there is nothing in the pamphlet inconsistent with the instructions. Fagen Elevator v. Pfiester, supra, affirms a judgment for plaintiff notwithstanding a stronger claim of misconduct of the jury than that here. See also Keller v. Dodds, 224 Iowa 935, 277 N.W. 467.

In McMahon v. Iowa Ice Co., 137 Iowa 368, 371, 114 N.W. 203, jurors made affidavit that because a writing had not been sent to the jury room they excluded it from their consideration. We held the affidavits were not receivable thus to impeach the verdict. By analogy this decision seems to be applicable here.

▮ The second respect in which misconduct of the jury is asserted is based on affidavits of four jurors that juror Reish told other jurors he had owned a truck like that driven by plaintiff and it could not travel 50 miles per hour when loaded with eight tons of crushed rock. Two of the affiants say they accepted the statement as a fact. The other two state they did not believe it but thought some other jurors did.

Reish made a counteraffidavit denying the statement attributed to him and denying he ever owned a truck like that driven by plaintiff. Another juror made an affidavit like Reish's. A third affidavit states the jury did not consider any matter not shown in evidence in reaching its verdict.

Although the trial court made no definite finding on these conflicting affidavits he did hold no ground for new trial had been shown, the trial was fair and the result just and right. The court had a good deal of discretion in passing on this ground of defendant's motion for new trial. It does not clearly appear there was an abuse of discretion in denying a new trial on this ground. Hence we do not reverse on this account. See Krieg v. Grant, supra, 248 Iowa 396, 404, 80 N.W.2d 724, 727–30.

V. Error is assigned in the court's refusal to let exhibits 18 and 19 go with the jury when it retired. These exhibits are loose-leaf records of approval by the state department of motor vehicles of the turn signals and rear lamp with which defendant's car was equipped.

Code (1950) section 321.317 provides the signals of intention to turn and stop or suddenly decrease speed "may be given either by means of the hand and arm or other proper signal or signal device of a type approved by the department * * *." As

stated, it is conceded defendant gave no hand-and-arm signal. However defendant pleaded his car was equipped with electrical directional and stop-signal devices of a type approved by the department of motor vehicles and he gave proper signals, by use of the devices, of his intention to turn left and slow down or stop.

Rule 198, Rules of Civil Procedure, states: "When retiring to deliberate, the jury shall take with them all exhibits in evidence except as otherwise ordered. * * *." Apparently there is no decision of ours involving this rule. The statute it supersedes (section 11503, Code, 1939) was somewhat different. Our precedents while the statute was in force held it was ordinarily within the court's discretion to send exhibits to the jury although sometimes it was a matter of right. In any event refusal to send them was not error unless prejudice was shown. White v. Walker, 212 Iowa 1100, 1102, 237 N.W. 499, and citations; Hraha v. Maple Block Coal Co., 154 Iowa 710, 714, 715, 135 N.W. 406.

The general rule is the trial court may in its discretion permit the jury to have during their deliberations writings received in evidence. 89 C. J. S., Trial, section 466a; 53 Am. Jur., Trial, section 924. We think our rule contemplates the matter is largely left to the trial court's discretion.

Although exhibits 18 and 19 might well have been given the jury we are not persuaded refusal to do so was prejudicial or constitutes an abuse of discretion. The important fact each exhibit shows, that the device was approved, appears by oral evidence of a state highway patrolman who identified the writings. The exhibits are reports of a laboratory which tested the devices, on which reports approval of the state department is endorsed. They contain quite a little information of a rather technical nature.

Further, the record does not show defendant asked that exhibits 18 and 19 be given the jury or voiced any objection to the court's announcement, apparently on his own motion, he would not permit this to be done. We have held a similar record presents no question for our consideration. Parnham v. Weeks, 180 Iowa 649, 658, 163 N.W. 454.

VI. Remaining complaints are against instructions to the jury.

Defendant challenges some of the instructions (mainly the statement of the issues and No. 5) on the ground the first charge of negligence submitted to the jury was not pleaded. It is a combination, with some modification, of the first and third charges of negligence in plaintiff's petition. Defendant is not entitled to have this complaint considered because it was first made in the motion for new trial long after the verdict was returned. Rule 196, Rules of Civil Procedure; Stewart v. Hilton, 247 Iowa 988, 995, 77 N.W.2d 637, 641, and citations; Soreide v. Vilas & Co., supra, 247 Iowa 1139, 1151, 78 N.W.2d 41, 48, and citations.

VII. Another objection to the court's statement of the issues, properly made before the instructions were read to the jury, must be sustained. This statement and the instructions as a whole do not mention what defendant calls his affirmative defense, referred to in Division V hereof (on which he concedes he had the burden of proof), that his car was equipped with electrical signal devices of a type approved by the department of motor vehicles and he gave proper signals, by use of these devices, of intention to turn and slow down or stop.

There is substantial evidence to support this defense and defendant was entitled to have it submitted to the jury under correct instructions. Rule 196, R. C. P.; LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 958, 11 N.W.2d 36, 50; Harrington v. Fortman, supra, 233 Iowa 92, 100, 8 N.W.2d 713, 717, and citations; Schulte v. Ideal Food Products Co., 208 Iowa 767, 775, 226 N.W. 174; 88 C. J. S., Trial, section 302.

VIII. Perhaps defendant's most vigorous attack is upon instruction 6, apparently intended to state the law governing the first submitted charge of negligence. The instruction correctly states the law then in effect (1950 Code, section 321.316) required a signal of intention to stop or suddenly decrease speed to be given the driver of any vehicle immediately to the rear when there is opportunity to give such signal. Also that the signal may be given by hand and arm or device approved by the state department (section 321.317). The instruction then

summarizes what defendant says he did to indicate a left turn by flashing his turn signal and to step on his brake pedal to flash his taillights to indicate a decrease of speed. The instruction then states defendant "makes no claim of giving any signal of any kind that he was stopping or going to stop." Finally the jury is told if defendant had no legal excuse for not giving a proper signal he would be negligent, but if he had such excuse or did not have opportunity to give a signal as required by law he would not be negligent in failing to do so.

We think instruction 6, especially that within quotation marks, is error in two respects, both of which defendant pointed out by proper exceptions. Although plaintiff testifies defendant gave no signals of any kind there is substantial evidence he at least gave a proper signal, by the use of his signal device, of intention to turn left at the intersection, as required by section 321.315 the substance of which is quoted in Division I hereof. Section 321.320 states a motorist intending to turn left "shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard * * *."

There is little doubt the Lowe car, approaching from the opposite direction, was so close to the intersection as to constitute such a hazard. Defendant was therefore compelled by statute to yield the right of way to Lowe. If, as defendant in effect testifies, he gave a proper signal as required by section 321.315 of his intention to turn left we think such signal was sufficient notice to plaintiff that defendant would stop if necessary to yield the right of way to Lowe as required by law and no additional signal of defendant's intention to stop was required. The jury should have been so instructed. This seems especially clear in view of plaintiff's knowledge of the approach of the Lowe car.

So there may be no doubt as to our holding it is, stated abstractly, that where a motorist intending to make a left turn gives a proper signal of his intent to a driver following him the driver thereby has notice that the motorist who signals may be required to stop in order to yield the right of way to a vehicle approaching from the opposite direction, and no additional signal of intention to stop is required by statute.

The second respect in which instruction 6 is erroneous is that it virtually deprives defendant of the benefit of what he calls his affirmative defense, referred to in Divisions V and VII, that he gave a signal of his intention to suddenly decrease his speed or stop by a signal device approved by the state department. There is substantial evidence the department, at the time in question, had approved such a signal device to decrease speed or stop. The jury should have been told that if it found such a signal device was approved by the department at the time of the accident and was given by defendant, there was a proper signal of defendant's intention to suddenly decrease speed or stop.

We seem never to have passed directly upon the sufficiency of signaling a decrease of speed or stop by flashing the taillights. Harrington v. Fortman, supra, 233 Iowa 92, 8 N.W.2d 713, expresses no opinion on the question. However, under section 321.317 it seems clear such a signal device is adequate if approved by the state department and shown to be in working condition at the time. There is substantial evidence of these facts. Schroeder v. Kindschuh, supra, 229 Iowa 590, 595, 294 N.W. 784, 786, says of a signal to stop: "The only signal which plaintiff claims was given was that of his automatic taillight. We are of the opinion that it was for the jury to determine whether * * *· such a signal was sufficient to meet the requirements of sections 5025.06 to 5025.08, inclusive, of the Code, 1939" (sections 321.316 to 321.318, Code, 1950).

The trial court apparently felt the statutes require not only a signal to suddenly decrease speed but also an additional, different signal to stop. We cannot find such requirement. Apparently the legislature contemplated the same signal for a stop as for a sudden decrease of speed. Section 321.318 suggests the same hand-and-arm signal be given for both purposes. We find no indication different mechanical signals for these two movements are required by statute.

We are not to be understood as holding, irrespective of statutory requirements, the common-law duty of a motorist to exercise ordinary care may not, under the circumstances of a particular case, require a signal of his purpose to make some move which may be dangerous to other motorists. Clayton v.

McIlrath, supra, 241 Iowa 1162, 1168, 44 N.W.2d 741, 745, 27 A. L. R.2d 307, 313, quoted from in Division I, fully recognizes such a duty and cites several authorities in support.

The annotation in 29 A. L. R.2d 5, referred to near the end of Division I, states (pages 16, 17) : "Although the duty to give a signal * * * of the intention to slow or stop * * * is embodied in statutes in most jurisdictions, it has also been recognized that the common-law duty of exercising ordinary care in the operation of a motor vehicle may also require such a signal." To like effect is 5A Am. Jur., Automobiles and Highway Traffic, section 404.

IX. The error in instruction 6 pointed out in Division VIII also inheres, to a lesser extent in instructions 8, especially the third paragraph, and 10, although they are in some respects favorable to defendant. Instruction 8, like 6, assumes, and No. 10 flatly states twice, that defendant failed to give a proper signal of his intention to stop. This was a disputed issue which should have been submitted to the jury in harmony with the views expressed in Division VIII. It is of course error for an instruction to assume as true a matter which is in dispute in the evidence. State v. Dunne, 234 Iowa 1185, 1191, 15 N.W.2d 296, 299, and citations; Usher v. Stafford, 227 Iowa 443, 447, 288 N.W. 432; Ballain v. Brazelton, 221 Iowa 806, 807, 266 N.W. 522, and citations; 88 C. J. S., Trial, section 280a; 53 Am. Jur., Trial, section 605.

X. Instruction 12 also is erroneous upon a ground properly urged in the trial court. It undertakes to state the statutory regulations governing the speed of plaintiff's truck, to be applied in deciding whether there was contributory negligence. The instruction summarizes section 321.285 which requires careful and prudent speed, not greater than will permit stopping within the assured clear distance ahead. However, section 321.286 prohibited plaintiff from driving the truck in excess of 50 miles per hour. Neither No. 12 nor any instruction refers to this limitation.

Without pointing out the testimony to that effect we are clear the jury could properly find plaintiff was driving in excess of 50 miles per hour shortly before the accident, although,

as stated, he fixes such speed at 45 miles per hour. Since there is substantial evidence plaintiff violated section 321.286 it was error not to inform the jury of the speed limit it fixes. This point was urged in exceptions to the instructions and defendant requested an instruction upon the speed limit found in 321.286. In support of our conclusion see, in addition to the authorities cited in Division VII, Dakovich v. City of Des Moines, 241 Iowa 703, 710, 711, 42 N.W.2d 511, 515.

The errors in the instructions pointed out in Divisions VII to X entitle defendant to a new trial. Accordingly the judgment is reversed and the cause remanded.—Reversed and remanded.

All JUSTICES concur.